## BROUGHAM ET AL. v. BLANTON MANUFACTURING COMPANY.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 247.    Argued March 19, 1919.—Decided April 21, 1919.

The Meat Inspection Law applies to oleomargarine. P. 498.

Registration of a trade-name under the Trade Mark Law has no bearing on the right to use it under the Meat Inspection Law. P. 499.

Under the Meat Inspection Law the power to determine whether a trade-name is false, or deceptive, is lodged with the Secretary of Agriculture, and his determination, if not arbitrary, is conclusive. *Houston* v. *St. Louis Independent Packing Co., ante,* 479. *Id.*

The power of the Secretary is a continuing one; approval of a name at one time not precluding its disapproval later. P. 501.

*Held,* that the Secretary, having approved the name "Creamo" as a designation of an oleo product, containing 30% cream, and which was strongly extolled on that ground, was amply justified in denying the use when the cream had been greatly reduced or omitted, and replaced by skimmed milk; notwithstanding evidence that the manufacturer invested heavily upon the faith of the approval. *Id.*

243 Fed. Rep. 503, reversed.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Frierson* for appellants.

*Mr. Shepard Barclay*, with whom *Mr. S. Mayner Wallace* was on the brief, for appellee.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Appellants are officers of the Department of Agriculture charged with the administration of the meat inspection acts. The appellee, Blanton Manufacturing Company, is a manufacturer of oleomargarine and brought this suit against appellants to enjoin and restrain them from interfering with it in the use of the word "Creamo" as a trade-mark in the manufacture and sale of its product and the use of that mark upon packages of its product shipped from St. Louis in interstate commerce.

The District Court granted the injunction and its decree was affirmed by the Circuit Court of Appeals. 243 Fed. Rep. 503.

As a ground of suit and recovery the company relies upon the following facts and they express, in a general way, its contentions. To what extent they should be modified will be apparent as we proceed.

The company is a manufacturer of oleomargarine, having a factory at St. Louis, Missouri, which comprises a group of buildings specially arranged and equipped for the purpose of such manufacture and where the company has made an investment of many thousands of dollars. Its product has been sold in packages of various sizes, marked with a trade label or stencil adopted for that purpose, which trade-mark is the word "Creamo," used since 1904. Its trade has become extensive and valuable, its product has acquired a high reputation and become a source of profit, increasing yearly, and an interruption in the use of its trade-mark and label would cause serious injury in a sum exceeding $5000.

January 6, 1908, the company applied to the United

States Patent Office for the registration of "Creamo" as a trade-mark, it was duly registered June 9, 1908, and the company has since enjoyed the use of it and made contracts with dealers under it, and the company's oleo-margarine is known to its customers far and wide by that label, trade-name and mark.

In 1906, after the enactment of the Act of June 30, 1906, c. 3913, 34 Stat. 669, concerning the inspection of "meat and meat food products," the company was informed by the Bureau of Animal Industry that its plant would be subject to inspection under the act of Congress. The company objected but yielded to avoid controversy and hazard to its interest, and an inspector was installed. The company, however, contends that its manufacture of oleomargarine is not subject to the power and authority of the bureau.

The Secretary of Agriculture, in 1907, approved the company's trade-mark of "Creamo" and upon the faith of the approval the company has used the same and by expenditure of large sums of money has extended its popularity and publicity; but, notwithstanding, Dr. Brougham (one of the appellants) threatened the company that from and after March 1, 1914, its use would not be allowed and that the inspector in the establishment of the company would enforce the threat and attempt to prevent the use of the trade-mark and label.

The trade-mark is duly registered in the office of the Secretary of State of the State of Missouri.

Some of the contentions of the company are somewhat difficult to handle—indeed, to get at in separation. One of these is that the Bureau of Animal Industry has no authority or power over the company's product, its manufacture or market. The basis of the contention is that the food products indicated by "the meat inspection act do not include a food product bearing the trade-name 'oleomargarine,' prescribed by a special revenue law to

be used in the sale thereof, and that statutory name is not 'false or deceptive' when so used." And for the contention the company relies on *Homer* v. *Collector*, 1 Wall. 486, and *Chew Hing Lung* v. *Wise*, 176 U. S. 156. The further contention is that § 6 of the Oleomargarine Act (24 Stat. 209) requires the article to be packed in a particular way which is not the same as that prescribed by the meat inspection act and was in force before the latter was enacted, and therefore excluded "an article like this oleomargarine having a 'trade-name' by law." And yet again that the Food and Drugs Act, which is *"in pari materia,* enacts that an 'article of food' containing no poisonous or deleterious ingredients shall not be deemed misbranded" which shall thereafter be known as articles of food under their own distinctive names and not offered for sale under the distinctive name of another article if the name be accompanied on the same label or brand by the name of the place where manufactured or produced. And it is said that the company's oleomargarine bears that statutory trade-name and hence should not be considered misbranded. *United States* v. *Coca Cola Co.*, 241 U. S. 265, is adduced to support the contention. We do not consider it necessary to follow the company's argument in detail. It is rather involved. We disagree with it. In other words, we are of opinion that the meat inspection act is applicable. This was the decision of the Circuit Court of Appeals. The company's oleomargarine is a meat product, compounded, among other things, of oleo oil and neutral lard.[1] Besides, it is not sold under the name of oleomargarine alone; there is the qualifying addition of the word "Creamo," and used, as we shall hereafter see, to qualify and distinguish it from other combinations which might bear the designation oleomargarine.

[1] Defined in the testimony to be "a lard produced from the leaf of a pig, neutralized so as to take the taste and smell out of it."

We pass to the consideration of the meat inspection acts (of June 30, 1906, and March 4, 1907, 34 Stat. 669, 1260). They require an inspection of all meat and meat food products prepared for interstate and foreign commerce and provide that no persons or firm or corporation shall offer for transportation, and no carrier shall transport in interstate or foreign commerce, any such products unless marked "Inspected and passed," and that "no such meat or meat food products shall be sold or offered for sale by any person, firm, or corporation in interstate or foreign commerce under any false or deceptive name; but established trade name or names which are usual to such products and which are not false and deceptive and which shall be approved by the Secretary of Agriculture are permitted."

It is the contention of the Government that the use of the word "Creamo" is deceptive and induces the belief that cream is a substantial ingredient of the oleomargarine. The company earnestly contends to the contrary and that, besides, the designation "Creamo" has received the approval of the Department of Agriculture and has been sanctioned as an appropriate trade-mark by the Interior Department (Patent Office). The latter contention may be immediately put to one side. The test of the product is the meat inspection laws, not the trade-mark laws, and therefore we are concerned with the action of the Department of Agriculture and not with that of the Interior Department. And so intimately is the case concerned with the action of the Department of Agriculture that the basic and dominant contention of the Government is that to the department is committed the power of determining the fact of the influence of the name and label of the company. In other words, the power of determining whether a trade name is "false or deceptive" given by the law to the Secretary of Agriculture is, when exercised, conclusive of the falsity or deception of the name.

(*Bates & Guild Co.* v. *Payne*, 194 U. S. 106, and cases cited; *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659), and the power necessarily is a continuing one. The contention and the cited cases have been approved very lately in *Houston* v. *St. Louis Independent Packing Co.*, ante, 479, in which it is declared that the decision of the department, unless arbitrary, is conclusive. A sketch of the evidence, therefore, becomes necessary.

As early as 1904 there was, if not controversy, discussion between the company and the department. It was not of serious extent. The company was indulged in the representation that its product was composed of "Butter, Oleo Oil, Neutral, Cream and Salt" and that these were "churned in an abundance of richest cream, resulting in a perfect substitute for butter." But there was objection to a statement that the oils were "doubly inspected" by the United States Inspectors, "insuring absolute purity and cleanliness." Such was the condition of things, we may deduce from the testimony, until 1908.

We may say, in passing, that in the beginning 30% of cream was used and the word "Creamo" was selected to suggest such ingredient to repel the criticisms of the butter makers who represented that oleomargarine was produced from "sewerage and dead horses." But it appears from the testimony that the use of cream was discontinued, skimmed milk being used instead, it having been discovered by the government chemists that it was not the butter fat in the milk which produced the flavor, but it, the flavor, came from skimmed milk.

October 2, 1912, an objection came from the department to the use of the company's label and discussion ensued, extending over a period of twelve or fifteen months. The department then announced that the use of the word "Creamo" was "considered deceptive and misleading and its future use could not be permitted." It was, however, suggested that "Creamo Brand Oleomargarine"

be used, the words to be displayed alike in prominent type, and that cream should be used in the product, its use having been discontinued. Upon this ruling of the department and the resistance of the company to it the contest was waged for a time. The company contended that the word "Creamo" was arbitrary and not descriptive; the department asserted the contrary and that it "conveyed a false inference to the consuming public," and, notwithstanding an offer by the company to use 10% of cream, insisted upon the use of the word "brand" and required also some modifications of the label. It further declared that if the requirements of the bureau should not be complied with on and after March 1, 1914, the inspector in charge at St. Louis would be instructed to prohibit "the use of all labels, wrappers, cartons, etc., which do not bear the bureau stamp of approval and number."

Such is the testimony in outline, and it is manifest that the action of the department was not arbitrary but given upon a consideration of the circumstances and the fact of the trade-name "Creamo" having a deceptive implication to the consuming public.

But against the decision of the department the company opposes the previous approval of "Creamo" as a trade-name and alleges that upon the faith of the approval the company has used the same and by the expenditure of large sums of money—testified to be about $10,000 a year—has made its product public and popular under that name. The answer to the contention is that the meat inspection acts contemplate and confer a continuing inspection and power, a power necessarily not exhausted by one exercise. Besides, the approval was given at a time when the company used 30% of cream in its product and declared that it and other ingredients were "churned in an abundance of richest cream, resulting in a perfect substitute for butter." The indulgence of the department had justifi-

cation. When the practice of the company changed, when it commenced to vary the percentages of cream and finally used none at all, naturally the department changed its ruling. The company can, therefore, claim no right from the prior ruling. There may be value in the use of the trade-name "Creamo," as the company asserts, and detriment, it may be, in any change or qualification of it; but its value may be in its deception—its suggestion of cream appealing to the popular preference for that article over skimmed milk, though the scientific judgment may be in favor of the latter, a judgment possibly not known or if known not appreciated or accepted. And the deception would not be taken away and the purpose of the law satisfied by the addition of 10% of cream which the company offered to make. At least such was the judgment of the department, and we cannot pronounce it arbitrary.

It will be observed from the quoted provisions of the meat inspection act that two conditions are presented: If "Creamo Oleomargarine" is to be regarded as the name of the product it is false and deceptive, whatever it may have been formerly; if it be asserted to be an established trade-name it has not received the approval of the Secretary of Agriculture and hence its use is without legal permission.

*Decree of the Circuit Court of Appeals is reversed and the case remanded to the District Court with direction to dismiss the bill.*

MR. JUSTICE MCREYNOLDS took no part in the decision of the case.