## FEDERAL TRADE COMMISSION v. KAY.

Circuit Court of Appeals, Seventh Circuit.
September 18, 1929.

Rehearing Denied November 8, 1929.

No. 4104.

Edward L. Smith, of Phillipsburg, N. J., for petitioner.

Abbott E. Kay, pro se.

Before ALSCHULER and PAGE, Circuit Judges, and LUSE, District Judge.

LUSE, District Judge. The Federal Trade Commission, the petitioner, seeks a decree of this court for enforcement of the modified order of the petitioner dated June 21, 1928, against Abbott E. Kay, under the provisions of section 5 of the Act of Congress approved September 26, 1914 (38 Stat. 717 [15 USCA § 45]).

On December 14, 1922, the petitioner issued a complaint charging respondent, Kay, and one R. T. Nelson with the use of unfair methods of competition in interstate commerce, the gist of which was that Kay and

Nelson were producing and marketing in interstate commerce a product or substance as radium which in fact was not radium. After answers were filed, testimony was heard before an examiner of the Commission, and the Commission made its findings of fact and its conclusion, and pursuant thereto issued, and caused to be served, an order requiring the respondents to cease and desist from such methods of competition. On June 21, 1928, the Commission, after notice and hearing, modified its findings of fact and issued its modified order as follows:

"Modified Order to Cease and Desist.

"It is Now Ordered that respondents, Abbott E. Kay and R. T. Nelson, as individuals and as copartners, doing business under the name of Aaban Radium Company, their servants, agents, and employees, cease and desist from further, in any manner whatsoever,

"1. Selling or offering for sale or advertising as and for radium or as containing radium, or possessing radioactive properties, the product heretofore sold and advertised as and for radium by respondents.

"2. Applying, employing, or using descriptively the word 'radium' or any compound thereof implying radioactivity in connection with the sale, offering for sale, or advertising of the product heretofore sold and advertised as and for radium by respondents.

"3. Making or causing to be made in advertising matter or otherwise representations, statements, or assertions that the product heretofore sold and advertised by respondents is radium, or that said product contains radium.

"4. Making or causing to be made any false statement, claim, or representation of similar import or effect in connection with the sale of any other product or substance.

"It is Further Ordered that the respondents shall, within sixty (60) days after the service upon them of a copy of this order, file with the commission a report in writing setting forth in detail the manner and form in which they have complied with the order to cease and desist hereinbefore set forth."

Such modified order was served, and Nelson made and filed a report indicating that he had complied with the order to cease and desist, but the respondent, Kay, filed a report stating that he had no intention of abandoning his business. Whereupon the Commission applied to this court for its decree against him.

Respondent, Kay, appeared in propria persona and without counsel. No legal questions, as such, have been directly raised, except that the findings and order of the Commission were unwarranted under the evidence, but the entire record has been carefully examined with a view to determining the legality and correctness of the Commission's findings and order.

Section 5 of the Trade Commission Act makes the Commission's findings, conclusive as to the facts, if supported by evidence. The government Bureau of Standards was furnished with several samples of the product which the respondent, Kay, had sent to various persons in various states, under the "escrow plan," or for other purposes, and subjected such specimens to the scientific tests to which that Bureau was accustomed to subject specimens of radium for determining their genuineness. None of such samples of the Kay product responded to the radium tests so applied. One other test was applied to a sample of Dr. Kay's product, outside the Bureau of Standards, and the testimony indicates that the sample failed to respond to such test. Such failure in all instances, the testimony amply shows, indicated that none of the samples of the Kay product had any appreciable radioactivity. It is true that radioactivity found by the photographic and electroscopic tests, which were used in all cases, may be found upon tests of mesothorium as well as radium. Nevertheless absence of radioactivity sufficient to affect a sensitive photographic film, or an electroscope, is scientifically considered as proof that the specimen tested is neither radium nor mesothorium.

It appears from the evidence that in the radium industry the regular method of purchase by physicians from the manufacturers of genuine radium is for the latter to send the product which it proposes to sell to the government Bureau of Standards for tests. The Bureau customarily subjects the product so submitted to the electroscopic and photographic tests, and compares the results of such tests with similar tests made of a standard unit of radium kept by the Bureau for the purpose of comparison, and certifies the product proposed to be sold as having the radioactivity shown by the tests, and the amount of such radioactivity is admeasured by comparison with the Bureau's radium standard. The Bureau does not ordinarily determine whether the product submitted to it is actually radium, or some other substance, such as mesothorium, hav-

ing radioactivity. The explanation for this is that the process of determining whether the product is actually radium, or mesothorium, or some other radioactive substance, is an intricate one, requiring damaging or destruction of the plaques or tubes in which the product is usually contained, and some interference with the product itself. The result is that the Bureau of Standards has contented itself with certifying to the radioactivity of the commercial product in terms of radium equivalent, as determined by its comparison with the radioactivity of the known standard unit of the Bureau. In commercial practice radium thus submitted to the Bureau is so certified and transmitted to the purchaser's bank, and delivered to the purchaser upon payment of the purchase price to the bank after examination of the product with its certificate. Respondent, Kay, makes much of the omission by the Bureau of Standards to determine that the specimens commercially submitted to it are actually radium, but it is apparent that this is no answer to the charge made by the Federal Trade Commission that the product of the respondent, Kay, has no radioactivity whatsoever, is not radium, and hence is untruthfully and falsely marketed by the respondent Kay as radium.

■ The evidence before the Commission amply established the fact that the respondent, Kay, had advertised in various magazines, some of them in general circulation, that his product was radium. The cases, Federal Trade Commission v. Winstead Hosiery Co., 258 U. S. 483, 42 S. Ct. 384, 66 L. Ed. 729; Royal Baking Powder Co. v. Federal Trade Commission (C. C. A.) 281 F. 744; Indiana Quartered Oak Co. v. Federal Trade Commission (C. C. A.) 26 F.(2d) 340, and cases cited, hold that false labelling, and advertisements which are false in fact, constitute an unfair method of competition, placed within the cognizance of the Federal Trade Commission by section 5 of the Trade Commission Act.

■ It is suggested by respondent's (Kay's) report to the Commission that respondent has registered a trade-mark for his product, consisting of the words, "Kay-Radium." Laying aside all question as to whether or not such trade-mark may not be invalid because it purports to describe the article by the word "radium," and as a descriptive term not permitted to be appropriated under the provisions of the Trade-Mark Act, it is clear that registration of a trade-mark in the Patent Office is no pro-

tection against proceedings under section 5 of the Federal Trade Commission Act, where such trade-mark is in fact used falsely and as a part of an unfair method of competition. Assuming that respondent has registered his trade-mark as above indicated, the test of his methods of competition is, not whether a trade-mark may have been registered, but whether his methods fall within the condemnation of the Federal Trade Commission Act, which declares "unfair methods of competition in commerce are declared unlawful." Brougham et al. v. Blanton Mfg. Co., 249 U. S. 495, 39 S. Ct. 363, 63 L. Ed. 725.

■ The evidence does not disclose how extensive a business respondent has done, but it is apparent that he has been, and is engaged in, advertising and distributing his product in interstate commerce. Radium is used largely for the treatment of disease, and especially cancer, and it can hardly be gainsaid that any misrepresentation with respect to the identity of respondent's product is a matter of public interest with which the Commission is, by section 5 of the Trade Commission Act, empowered to deal.

Respondent, Kay, relies largely upon the testimony of a number of patients who had various ailments, and who testified to beneficial results from the use of respondent's product contained in plaques and tubes, and applied, presumably, as radium is. Witnesses for the Commission accounted for such results and testimony as due to mental suggestion. Whether that be correct or not, the proneness of lay patients to err in accrediting responsibility for benefits to health is well understood.

■ The substance known to science as radium, so the evidence indicates, is expensive to produce, often requiring reduction of a ton of ore to produce a milligram of radium, sells in the market at around $110 per milligram, requires a large ore refining plant for its production, and invariably responds positively to the photographic film and electroscopic tests, while the Kay product is negative under the two tests last mentioned, is produced in a laboratory in his home, and offered for sale at $10 per milligram. Granting that discovery of a new source and comparatively inexpensive method of extraction might account for some of these differences, the fact that the Kay product fails under the scientific tests, together with the other differences noted, strongly indicate a different substance rather than a difference in source and methods of extraction of radium. Opinion evidence that the

Kay product is not radium was also adduced. It is apparent from the foregoing, without further discussion of detail, that the findings of the Commission were amply sustained by evidence.

A considerable period of time elapsed between the time when the Commission filed its original findings and order to cease and desist and the filing of its modified findings and order. After the original findings and order were filed, a stay was applied for, which was denied on March 29, 1924. The record does not disclose any report by the respondent, Kay, to the first order to cease and desist, and the matter seems to have remained dormant until June 21, 1928, when the modified findings and order were made, to which response was made by the respondents as above indicated. The transcript of the record was not filed in the court until October 9, 1928. While we withhold approval of so long delay, the question is apparently covered by the provisions of section 5 of the Trade Commission Act, which provides:

"Until a transcript of the record in such hearing shall have been filed in a Circuit Court of Appeals of the United States, as hereinafter provided, the Commission may at any time, * * * modify or set aside, in whole or in part, any report or any order made or issued by it under this section."

If more prompt action was desired by the respondent, the same section of the act permits the respondent to petition for review, and requires the Commission to certify and file in court the required transcript.

Paragraph No. 4 of the modified order of the Commission is somewhat indefinite and uncertain, and, we believe, susceptible of a construction broader than the facts warrant. It is ordered that the said paragraph 4 be eliminated from the order of the Commission, and that in lieu thereof there be inserted the following:

Selling, offering for sale, or advertising, as and for radium, or as containing radium or possessing radioactive properties, or applying, employing, or using descriptively the word "radium" or any compound thereof implying radioactivity, in connection with the sale, offering for sale, or advertising of any such product, or making or causing to be made in any advertising matter or otherwise any representations, statements, or assertions that the product advertised or sold is radium or contains radium or radioactive properties, unless such product is in fact radium and possesses the radioactive prop-

erties of radium as ascertained by photographic and electroscopic tests applied by generally recognized authorities such as the United States Bureau of Standards at Washington, D. C.

With the order of the Federal Trade Commission thus modified, the prayer of the petition is granted.