## FEDERAL TRADE COMMISSION v. GOOD-GRAPE CO.

### No. 5349.

Circuit Court of Appeals, Sixth Circuit.

Nov. 10, 1930.

E. J. Hornibrook and J. T. Clark, both of Washington, D. C. (Robt. E. Healy, Adrien F. Busick, James W. Nichol, and E. J. Hornibrook, all of Washington, D. C., on the brief), for petitioner.

James L. Fort, of Washington, D. C. (Bloodworth & Fort, of Washington, D. C., Hauer, Spraul, Topmoeller & Arnold, of Cincinnati, Ohio, on the brief), for respondent.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

This is an original proceeding instituted by the Federal Trade Commission against the Good-Grape Company to enforce a modified order [1] issued by the Commission which, with the original order [2] it modifies, is set out in the margin. There is no pretense that respondent obeyed the order. The contention is that it was invalid. Respondent's business consisted of manufacturing concentrates and selling them to bottlers. The bottlers produced therefrom and bottled a soft drink beverage which they sold to retailers and which in turn was dispensed to the consuming public. The complaint of the Commission was that respondent violated section 5 of the Act of 1914, c. 311 (U. S. Code, tit. 15, c. 2, § 45 [15 USCA § 45]), by causing the beverage to be manufactured and sold in interstate commerce under the name, brand, or label "Good-Grape" and by advertising this product as "Good-Grape," "Grape," and "Fruit of the Vine," and by otherwise falsely asserting and implying that it was composed wholly or in part of the natural juice of the grape. The complaint further charged that the beverage produced from the concentrates manufactured by respondent was sold in interstate commerce in competition with grape juice and other grape products and imitation grape products. These allegations are sustained by findings of fact which are in turn supported by evidence, and are conclusive. U. S. Code, tit. 15, c. 2, § 45, par. 3 (15 US CA. § 45, third paragraph).

The Commission also found that, although the beverage produced from the concentrates sold by respondent was only an imitation grape product, artificially colored and flavored and not made from the natural fruit of the grape, yet the respondent extensively advertised it by means of publications, circulating in interstate commerce and otherwise, as the juice from the natural fruit of the grape; that respondent designed and approved the labels attached to the bottles containing the beverage; that there appeared on some of these labels the name "Good-Grape," and upon others, in addition to this hyphenated word, the phrase or slogan "Fruit of the Vine"; that prior to June, 1923, respondent furnished to bottlers crowns or bottle caps bearing the name "Good-Grape"; that since that date it had furnished crowns or caps bearing the name "Good-Grape" and in addition thereto the phrase "Imitation, artificially colored and flavored" in very small letters, difficult to read; that the bottles used were designed and approved by respondent and had the name "Good-Grape" blown therein, and that, except upon the bottle crowns or caps as indicated, respondent made no reference in its advertising to the fact that the beverage was an imitation, artificially colored and flavored.

[1] "It is ordered that the respondent, the Good-Grape Company, its officers, representatives, agents, servants, and employees, cease and desist from—

"(1) Using or authorizing the use by others, in interstate commerce, of 'Good-Grape,' the phrase or slogan 'Fruit of the vine,' or the word 'Grape' either alone or in conjunction or combination with any other word or words, letter, or letters as a corporate or trade name, or as a trade brand or designation in advertising, or on business stationery, or on labels or bottles or other containers, or the caps, crowns, or stoppers thereof, in connection with the sale or distribution of a product which is not composed wholly of the natural juice or fruit of grapes, except and unless such product is composed in substantial part of the natural juice or fruit of grapes, and 'Good-Grape,' 'Fruit of the vine,' or the word 'grape,' wherever used as above described, is accompanied with a word or words, equally conspicuous with it in character or type, clearly indicating that such product is composed in part of material or materials other than the natural juice or fruit of grapes.

"(2) Using or authorizing the use by others, in interstate commerce, in advertising or upon business stationery or on bottles or other containers or on labels, crowns, stoppers, or otherwise, of any word or words, picture, or symbol falsely representing or suggesting that a product is made from or contains the natural juice or fruit of grapes."

[2] "It is ordered that the respondent, Good-Grape Company, its officers, representatives, agents, servants, and employees, do cease and desist from directly or indirectly:

"(1) Using or authorizing the use of the name 'Good-Grape' whether on advertising matter relating to the concentrated 'Good-Grape' or the beverage 'Good-Grape' or on bottles or other containers thereof, or on labels or crowns or stoppers of such bottles or containers, or otherwise, unless and until the name 'Good-Grape' is in every instance accompanied with an explanation in close proximity to the name 'Good-Grape' in letters at least one-half as high and one-half as wide as the letters used in the accompanying name 'Good-Grape,' and of heaviness of color and style of lettering which will render them at least equally as conspicuous in proportion to their height and width as the letters in the accompanying name 'Good-Grape,' which explanation shall contain the statement that the concentrate 'Good-Grape' or the beverage 'Good-Grape' is an imitation and is not grape juice. The following may be used for this explanation: 'Imitation grape—not grape juice.'

"(2) Using or authorizing the use by others in advertising or upon business stationery or on bottles or other containers or on labels, crowns, stoppers, or otherwise, or at all, the phrase or slogan 'Fruit of the vine,' in connection with the sale of (a) a concentrate or concentrates not made from grapes and not containing the juice from the natural fruit of grapes from which a beverage is made, or (b) a beverage, not made from grapes and not containing juice from the natural fruit of grapes.

"(3) Using or authorizing the use by others in advertising or upon business stationery or on bottles or other containers or on labels, crowns, stoppers, or otherwise, or at all, any word or words, pictures, or symbols falsely representing or suggesting (a) that a concentrate or concentrates from which a beverage is made is made from grapes and contains the juice from the natural fruit of grapes, or (b) that a beverage is made from grapes and contains the juice from the natural fruit of grapes."

■ These findings are supported by the evidence. The weight to be given to the facts and circumstances as well as the inference to be reasonably drawn therefrom was for the Commission. Fed. Tr. Comm. v. Pac. Paper Ass'n, 273 U. S. 52, 63, 47 S. Ct. 255, 71 L. Ed. 534. The open question is whether the methods and practices of respondent amount to unfair competition to the detriment of a particular and substantial public interest. Fed. Tr. Comm. v. Klesner, 280 U. S. 19, 28, 50 S. Ct. 1, 74 L. Ed. 138; Fed. Tr. Comm. v. Gratz, 253 U. S. 421, 427, 40 S. Ct. 572, 64 L. Ed. 993; Fed. Tr. Comm. v. Balme, 23 F.(2d) 615, 619 (C. C. A. 2).

■ This court holds that such methods and practices are unfair to both classes of respondent's competitors, to wit, those who sell genuine grape juice and those who frankly sell imitations thereof but mark their goods truthfully. They necessarily divert or tend to divert the trade and injure the business of such competitors. Fed. Tr. Comm. v. Winstead Co., 258 U. S. 483, 493, 42 S. Ct. 384, 66 L. Ed. 729; Procter & Gamble Co. v. Fed. Tr. Comm., 11 F.(2d) 47, 48 (C. C. A. 6); Fed. Tr. Comm. v. Balme, supra; Guar. Vet. Co. v. Fed. Tr. Comm., 285 F. 853, 860 (C. C. A. 2); Royal Bak. Powd. Co. v. Fed. Tr. Comm., 281 F. 744, 752 (C. C. A. 2); Fed. Tr. Comm. v. Kay, 35 F.(2d) 160, 162 (C. C. A. 7); Amer. Tob. Co. v. Fed. Tr. Comm., 9 F.(2d) 570, 575 (C. C. A. 2). It serves no worthwhile purpose to elaborate upon these cases. It is enough that they establish the position taken. In this particular the case presents an aspect entirely different from that shown in Raladam Co. v. Commission (C. C. A.) 42 F.(2d) 430, or in Berkey & Gay Fur. Co. v. Commission (C. C. A.) 42 F.(2d) 427, both decided June 28, 1930.

It is equally clear that a substantial public interest is involved. The beverage is sold for human consumption and ordinarily for immediate use, the labeled cap or crown having been first removed. The average purchaser makes for himself only a casual if any examination of the real character of this five-cent drink. About seventy million bottles of it were consumed in each of the years 1923 and 1924.

■ Respondent insists that the Commission erroneously declined to permit it to show that in the interval between the issuance of the original and the modified order it had adopted a new formula and was using an amount of grape juice substantially greater than that originally used. It is noted that respondent did not reveal to the Commission or to this court the real amount of juice used in the new formula. However, the Commission was authorized to issue the modified order upon the original record (Fed. Tr. Comm. v. Kay, supra), and the allegation that respondent has in the meantime changed its practice did not strip the Commission of this power. Guar. Vet. Co. v. Fed. Tr. Comm., supra; Fox Film Corp. v. Fed. Tr. Comm., 296 F. 353, 357 (C. C. A. 2); Moir v. Fed. Tr. Comm., 12 F.(2d) 22, 27 (C. C. A. 1); Ark. Wholesale Groc. Ass'n v. Fed. Tr. Comm., 18 F.(2d) 866, 871 (C. C. A. 8). It was not compelled to assume that respondent had for all time ceased its original methods.

■ Respondent's brief complains that the witnesses before the examiner were excluded during the hearing, that one Sale, a chemist in the Department of Agriculture, and a witness for the Commission, violated this rule by reading a portion of the testimony of another witness, and that Sale's testimony should therefore be excluded. Whether Sale knew of the rule and violated it willfully is not shown. However, the weight of authority is that the acceptance or exclusion of such testimony is a matter of discretion. Respondent did not bring the action of the examiner to the attention of the Commission or seek a review of it here in the manner provided.

Upon the whole we conclude that the prayer of the petition should be granted, but not to the broad extent of the modified order. To do so would require respondent to change its formula as a prerequisite to the use of the words "Good-Grape" or "Grape" altogether, and would place respondent upon an unequal footing with other soft drink or soda water manufacturers who are permitted to apply to their products the name of a fruit or some variety thereof indicative of flavor only rather than of a claim that such beverage was in fact produced from such fruit.

The modified order will therefore be amended so as to add to clause (1) thereof the following, to wit: Or if the beverage produced is composed substantially as found by the Commission, then respondent, its officers, representatives, agents, servants, and employees, shall cease and desist altogether from the use of the phrase "Fruit of the Vine" and also from the use of the words "Good-Grape" or "Grape" in the connection indicated in this paragraph except and unless in the same connection it is made prominently to appear that the product is an imitation artificially colored and flavored.

An injunction will be granted restraining the respondent from indulging in any of the practices forbidden by the modified order of the Commission as the same is amended in this opinion.