### IRWIN et al. v. FEDERAL TRADE COMMISSION.

### No. 12646.

Circuit Court of Appeals, Eighth Circuit.

June 15, 1944.

Rehearing Denied July 17, 1944.

Frank A. Whiteley, of Minneapolis, Minn., for petitioners.

Joseph J. Smith, Jr., Asst. Chief Counsel, Federal Trade Commission, of Washington, D. C. (W. T. Kelley, Chief Counsel, and Eugene W. Burr, Sp. Atty., Federal Trade Commission, both of Washington, D. C., on the brief), for respondent.

Before STONE, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

The petitioners, doing business as Associated Laboratories, have submitted their petition under 15 U.S.C.A. § 45(c), for review of a cease and desist order entered against them by the Federal Trade Commission on April 30, 1943. They pray for reversal of the order, and the Commission prays that it be affirmed and that this court command obedience to it.

The proceedings were instituted before the Commission by complaint reciting probable cause to believe that petitioners had violated the provisions of the Federal Trade Commission Act and that a proceeding in respect thereof would be in the public interest, and charging that petitioners were

engaged in the business of manufacturing and selling and distributing in interstate commerce, "a device designated as Gordon Detoxifier, a rectal irrigator designed for cleansing the bowels and intestines", and that to promote its sale petitioners disseminated by mail and otherwise, a number of false, misleading and deceptive advertisements concerning the device and what may be done by the use of it. In paragraph three, the complaint set out in haec verba within quotation marks, specific statements alleged to be typical of those contained in petitioners' advertisements and charged to be false, misleading and deceptive, and in paragraph four, it was charged that by the use of the representations set out and others similar, petitioners represent directly and by implication that the use of the device, designated as "Gordon's Detoxifier," will thoroughly and harmlessly cleanse both the large and the small intestine; that its use will massage and strengthen both the large and small intestine and strengthen the tissues of the intestinal tract; that the injection of oxygen into the intestinal tract by said device will destroy the anaerobic germ; that its use will purify the blood stream; that its use, often in one treatment, will relieve the pain of rheumatism, arthritis, and of neuritis; that its use will reduce hypertension or high blood pressure with resulting relief of strain on the heart and on the brain; that its use will reveal to the patient himself, what foods to avoid in order to insure maximum efficiency in digestion; that its use will result in lessening the burden thrown on the liver and kidneys; that its use, in a few treatments, will relieve sinus and antrum complications; that its use will result in the re-establishing of a normal peristalsis or the natural muscular activity of the intestines; that its use will assist, by minimizing deposits of calcium and magnesium salts on the walls of the arteries, in preventing their hardening; that said device will send, in a scientifically controlled manner, a pulsating stream of water and air bubbles into the bowels and into the otherwise inaccessible small intestine; that most ailments originate in the small intestine; that the use of Ozone in said device accelerates the healing process and stimulates recovery; and that ailments and conditions such as appendicitis, arthritis, asthma, colitis, constipation, excessive fatigue, foul breath, headache, gall bladder complications, high and low blood pressure, indigestion, irregular heart, kidney and bladder complications, liver complications, lumbago, menopause disturbances, muddy or pimply complexion, migraine, nervousness, pruritis ani, rheumatism, sinus trouble, rundown condition, shortness of breath, sleeplessness, ulcers of the stomach and bowels, and ulcerated colitis, are almost invariably caused by intestinal toxemia or toxins in the intestinal tract, and that such diseases or conditions can be successfully treated by petitioners' said device.

In paragraph five, after asserting the falsity of petitioners' said advertisements, it is charged that,

"In truth and in fact, the use of respondents' [petitioners here] said 'Gordon's Detoxifier' will not thoroughly and harmlessly cleanse both the large and small intestines. In fact, the frequent and repetitious use of said device may seriously interfere with the normal functioning of the lower bowels and may produce distinct harm by the removal of the normal protective mucous which should always be present on the surface of the mucosa of the lower bowels, thereby producing irritation. The use of said device will not massage and strengthen both the large and small intestines or any part of the intestinal tract. The injection by said device of oxygen into the intestinal tract will not destroy the anaerobic germ. The use of said device will not purify the blood stream and it will not relieve the pain caused by rheumatism, arthritis and neuritis. The use of said device will not reduce hypertension or high blood pressure and will have no effect on relieving strain on the heart or the brain. The use of said device will not reveal to the patient what foods to avoid in order to insure maximum efficiency in digestion. Its use will not lessen the burden thrown on the liver or the kidneys. Its use will not, in either a few treatments or in many treatments, relieve sinus and antrum complications. Its use will not result in the re-establishing of a normal peristalsis or the natural muscular activity of the intestine. Its use will not in any manner prevent the hardening of the arteries. Said device will not send a pulsating stream of water and air bubbles, in a scientifically controlled manner, into the small intestine. Furthermore, if water from said device should enter the small intestine the result of such penetration would not have a favorable effect on any disease or condition of the body, but might result in harmful or

serious consequences. Most ailments do not originate in the small intestines. The use of Ozone in said device will not accelerate the healing process and stimulate recovery, and if a significant amount of Ozone is injected into the intestinal tract, serious injury to health may follow. The ailments and conditions such as appendicitis, arthritis, asthma, colitis, constipation, excessive fatigue, foul breath, headache, gall bladder complications, high and low blood pressure, indigestion, irregular heart, kidney and bladder complications, liver complications, lumbago, menopause disturbances, muddy or pimply complexion, migraine, nervousness, pruritis ani, rheumatism, sinus trouble, rundown condition, shortness of breath, sleeplessness, ulcers of the stomach and bowels, and ulcerated colitis, are not almost invariably caused by intestinal toxemia or by the presence of toxins in the intestinal tract and such diseases or conditions cannot be successfully treated by the use of respondents' said device. Furthermore, the effect of said device is limited to an injection of liquid into the lower intestinal tract and its therapeutic value is correspondently limited to that of an ordinary enema."

The complaint also charged that petitioners' use of the term "hydro-surgery" in describing their device or the effects thereof, in the treatment of diseases or conditions of the human body, is false and misleading in that said term falsely indicates that the use of the device accomplishes results similar to results accomplished by surgery. It also charged that petitioners' use of the name "Gordon's Detoxifier" is false and misleading as falsely indicating that said device will remove or destroy toxins in the human system. In conclusion, it was alleged that all petitioners' acts and practices aforesaid are to the prejudice and injury of the public and constitute unfair and deceptive acts and practices in commerce within the intent and meaning of the Federal Trade Commission Act.[1]

The petitioners appeared and filed their answer to the complaint. They admitted that they were engaged in business as alleged in the complaint, and stated "that to the extent and as respondents have used in their advertising the specific details pre-

---

[1] The pertinent provisions of the statute are as follows:

"Sec. 5. (a) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful.

"The Commission is hereby empowered and directed to prevent persons, partnerships, or corporations * * * from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." 52 Stat. 111, 112, 15 U.S.C.A. § 45(a).

"(c) * * * The findings of the Commission as to the facts, if supported by evidence, shall be conclusive." 52 Stat. 112, 113; 15 U.S.C.A. § 45(c).

"Sec. 12. (a) It shall be unlawful for any person, partnership, or corporation to disseminate, or cause to be disseminated, any false advertisement—

"(1) By United States mails, or in commerce by any means, for the purpose of inducing, or which is likely to induce, directly or indirectly the purchase of food, drugs, devices, or cosmetics; or

"(2) By any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase in commerce of food, drugs, devices, or cosmetics.

"(b) The dissemination or the causing to be disseminated of any false advertisement within the provisions of sub-

section (a) of this section shall be an unfair or deceptive act or practice in commerce within the meaning of section 5." 52 Stat. 114, 115, 15 U.S.C.A. § 52.

"Sec. 15. For the purposes of sections 12, 13 and 14—

"(a) The term 'false advertisement' means an advertisement, other than labeling, which is misleading in a material respect; and in determining whether any advertisement is misleading, there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, sound, or any combination thereof, but also the extent to which the advertisement fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the commodity to which the advertisement relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual. * * *

"(d) The term 'device' * * * means instruments, apparatus, and contrivances, including their parts and accessories, intended (1) for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; or (2) to affect the structure or any function of the body of man or other animals." 52 Stat. 116, 15 U.S.C.A. § 55.

sented in the quotes in paragraph three and the statements set forth in paragraph four, such statements are true, and are justified by therapeutic results obtained by the use of their instrument." They denied generally the allegations of paragraph five of the complaint and specifically "that ailments and diseases referred to in paragraph five cannot be successfully treated by the use of respondents' instrument, when the generalization 'successfully' is properly limited to the producing of an alleviation of the patient's complaint and a degree of recovery therefrom and a degree of restoration to health. The respondents further deny the allegation of paragraph five that the effect of said device is limited to an injection of liquid into the lower intestinal tract and its therapeutic value is correspondingly limited to that of an ordinary enema. In this regard respondents affirm that no competent observer who understands the nature of respondents' instrument and has observed its operation and the results obtained by it could honestly make the claim that the instrument provides only means for giving an ordinary enema."

They denied that any use by them of the term "hydro-surgery" is false or misleading, but affirm "that by the use of a mechanical appliance including water certain favorable results in the treatment of ailments are obtained, which is true, and that such use is a form of 'hydro-surgery'." They also denied "that its use of its trade mark 'Detoxifier' falsely indicates that respondents instrument will remove or destroy toxins in the human system. The word 'Detoxifier' at the time adopted by the respondents as a trade mark for its instrument was a coined term, and if it suggests or indicates that the instrument to which it is applied will remove or destroy toxins in the human system this is a fact, which has been abundantly demonstrated in thousands and thousands of cases."

They allege "as an affirmative defense" "that the instrument which it sells is capable of producing and does produce therapeutic results of the highest value in the treatment of a large variety of human ailments.

"The medical profession comprises two groups of physicians, those who practice by the administration of drugs and the performance of surgical operations, involving the use of drugs, who are generally known as medical doctors or M.D.'s, and those who practice drugless healing by means of manual treatment and drugless appliances, who are generally known as chiropractors and osteopaths.

"It so happens that the medical doctors are extremely conservative in endorsing and using new forms of treatments, just as in the past they rejected bacterial discoveries, the use of anesthesia and other great therapeutic advances which from time to time have been brought into being and general use, almost invariably against strong and united opposition of the medical doctors. On the other hand, chiropractors and osteopaths are less conservative in the use of new appliances and where their efficiency is capable of demonstration have been quick to adopt them.

"The respondents' instrument is now being used by some 300 progressive and competent chiropractors and osteopaths. Their records show, in a manner which fair investigation must find incontrovertible, demonstration and proof, that the respondents' instrument sold as a 'Detoxifier' has in thousands and thousands of cases produced extraordinary therapeutic results in the remedying and alleviating of human ills, often when, before treatments with the 'Detoxifier', cases were regarded by medical doctors as hopeless.

"Respondents have made repeated efforts to have the American Medical Association and other organizations of the medical doctors investigate the uses of respondents' instrument and to have determined, under fair conditions which they themselves can name, the extent to which it is beneficial in the alleviating of large numbers of human ills. These efforts have run up against a stone wall. The medical doctors and their organizations have absolutely refused to investigate this instrument. Some medical doctors, under a bond of keeping their names secret, have, for themselves and for their families, taken treatments with the 'Detoxifier,' but aside from those individuals who will not permit respondents to reveal their names, the medical doctors have kept themselves in ignorance of the manner of use and the highly valuable therapeutic results obtained from the 'Detoxifier.'

"Respondents do not know, and presumably the Commission will refuse to inform them, who, or what organization has brought these charges before the Commission. Respondents assert that the charges

are false and constitute an attack on a business which is struggling against many adverse conditions at the present time and which is in fact of very great value to the public.

"For these reasons respondents demand that these charges be not determined upon theoretical conditions, but upon demonstrations of the machine itself in use, and upon the results obtained from that use.

"In this connection the Commission's attention is called to the fact that respondents are a small organization with little capital, and that such a proceeding as is instituted by this complaint might easily result in bringing about respondents' financial ruin. For all of which reasons it is respectfully urged that so far as possible costs to be incurred by respondents should be kept as low as possible."

On May 13, 1942, the Commission entered its order reciting that the matter was at issue and ready for the taking of testimony and evidence and designating a trial examiner to take the same at the time and place indicated with direction to him to make his report upon thereon.

Extensive evidence was taken before the examiner upon which he made his report, and thereafter the Commission granted a hearing and considered the evidence and made and entered its findings as to the facts, and its conclusion, and entered the cease and desist order here involved.[2]

---

[2] The Commission's order is as follows:

"It is ordered, that the respondents, Milton Irwin, Dr. Walter G. Berg, and Dr. David W. Miles, individually and trading as Associated Laboratories, or trading under any other name, and their agents, representatives and employees, directly or through any corporate or other device, in connection with the offering for sale, sale or distribution of respondents' device designated 'Gordon Detoxifier,' or any other device of substantially similar character, whether sold under the same name or under any other name, do forthwith cease and desist from directly or indirectly:

"1. Disseminating or causing to be disseminated any advertisement by means of the United States mails or by any means in commerce, as 'commerce' is defined in the Federal Trade Commission Act, which advertisement

"(a) uses the term 'hydro-surgery,' or any other term which includes the word 'surgery,' to describe respondents' device or the results obtained through the use of said device, or which otherwise represents or implies that the results obtained through the use of said device are comparable with those accomplished by surgery;

"(b) uses the word 'Detoxifier,' or any other word of similar import, to designate or describe respondents' device, or which otherwise represents or implies that said device will rid the body of toxins; or which advertisement represents, directly or by implication,

"(c) that respondents' device will cleanse the small intestine;

"(d) that said device will massage or strengthen the large or small intestine, or strengthen the tissues of the intestinal tract;

"(e) that the injection of oxygen into the intestinal tract by means of said device will destroy the anaerobic germs;

"(f) that said device will purify the blood stream;

"(g) that said device reduces high blood pressure;

"(h) that said device reveals to the patient which foods should be avoided in order to insure maximum efficiency in digestion;

"(i) that said device serves to lessen the burden upon the liver or kidneys;

"(j) that said device relieves sinus or antrum complications;

"(k) that the use of said device results in the reestablishing of a normal peristalsis or natural muscular activity of the intestines;

"(l) that said device assists in preventing hardening of the arteries;

"(m) that most ailments originate in the small intestine;

"(n) that the introduction of ozone into the body by means of said device accelerates the healing process or stimulates recovery;

"(o) that appendicitis, asthma, colitis, constipation, excessive fatigue, foul breath, headache, gall bladder complications, high or low blood pressure, indigestion, irregular heart, kidney or bladder complications, liver complications, lumbago, menopause disturbances, muddy or pimply complexion, migraine, nervousness, pruritis ani, rheumatism, sinus trouble, run-down condition, shortness of breath, sleeplessness, ulcers of the stomach or bowels, or ulcerative colitis are almost invariably caused by intestinal toxemia;

"(p) that said device constitutes an effective treatment for appendicitis, asthma, colitis, excessive fatigue, foul breath, gall bladder complications, high or low blood pressure, indigestion, irregular heart, kidney or bladder complica-

The findings set forth the facts in detail substantially as they are charged in the petition, but no finding or conclusion is made respecting advertisements concerning the use of petitioners'. device in the treatment of the disease of arthritis. Paragraph three of the findings, in part, reads as follows:

"Among and typical of the statements and representations contained in such advertisements disseminated and caused to be disseminated, as set forth above, by insertion in periodicals and by booklets, pamphlets, circulars, letters and other advertising material, are the following:

" 'This natural and drugless therapy performs as follows:

" '1. Cleanses both large and small bowel, thoroughly and in a harmless manner.

" '2. Massages the bowel and gives necessary tone to tissues involved.

" '3. Its employment of oxygen destroys the anaerobic germs, which can not live in this medium.

" '4. Purifies the blood stream; proved by microscopic examination after treatments.

\*     \*     \*     \*     \*

" '6. Reduces hypertension or high blood pressure, thus easing the work of the heart and freeing the walls of its cells, and the brain, from undue strain.

" '7. Indicates to patients what foods to avoid, to insure maximum efficiency in digestion.

" '8. Lessens the burden thrown on the liver and kidneys.

" '9. Improves sinus—and antrum complications in a few treatments.

" '10. Re-establishes a normal peristalsis, or natural muscular activity of the intestines.

\*     \*     \*     \*     \*

" '12. Assists in preventing the hardening of the arteries, by minimizing the deposits of calcium and magnesium salts on the walls.'

"A pulsating stream of water and air bubbles is introduced into the bowels in a scientifically controlled manner. This pulsating stream penetrates readily into the Small intestine, hitherto inaccessible to any other method of treatment. Most ailments are found to originate in the small intestine."

"Ozone is especially beneficial in cases of ulcers, colitis, bowel inflammation and toxemia.

"Ozone destroys bacteria on contact yet it is not a drug and is non-toxic and non-irritating. It promotes healing and stimulates."

"Specializing in Cases of
Intestinal Toxemia.
The Cause of Most Human Illness.
"The following symptoms and ailments are almost invariably caused by Intestinal Toxemia. They can now be successfully treated.
Appendicitis
\* \* \*
Asthma
Colitis
Constipation
Excessive Fatigue
Foul Breath
Headache
Gall Bladder Complications
High and Low Blood Pressure
Indigestion
Irregular Heart
Kidney and Bladder Complications
Liver Complications
Lumbago
Menopause Disturbances
Muddy or Pimply Complexion
[Migrain]
Nervousness
Pruritis Ani
Rheumatism
Sinus Trouble
Run Down Condition
Short of Breath
Sleeplessness
Ulcers of Stomach and Bowels
Ulcerative Colitis."

tions, liver complications, lumbago, menopause disturbances, muddy or pimply complexion, migraine, nervousness, pruritus ani, rheumatism, sinus trouble, run-down condition, shortness of breath, sleeplessness, ulcers of the stomach or bowels, or ulcerative colitis;

"(q) that said device constitutes an effective treatment for constipation, except insofar as it may afford temporary relief by the irrigation or flushing of the lower bowel;

"(r) that said device constitutes an effective treatment for headache, except insofar as it may afford temporary relief in those cases where such condition is due to constipation; or

"(s) that said device possesses any therapeutic value in excess of that possessed by the ordinary enema.

"2. Disseminating or causing to be disseminated any advertisement by any means for the purpose of inducing or which is likely to induce, directly or indirectly, the purchase in commerce, as 'commerce' is defined in the Federal Trade Commission Act, of respondents' device, which advertisement contains any representation prohibited in paragraph 1 hereof."

In this court petitioners have pressed their attack upon the findings, conclusion and order in briefs and oral arguments with serious earnestness, impressing the sincerity of their belief that their "Detoxifier" is an instrument of merit and that its use contributes to the alleviation of pain and sickness. Their testimony tended to show that it had been used upon many thousand sufferers, and there was no issue and no direct evidence was adduced that such use had in any instance inflicted injurious consequences. The two witnesses called by petitioners who had made very extensive use of the instrument were undoubtedly convinced as they testified that many patients had been greatly benefited. There was certainly no testimony that would have justified any injunctive order prohibiting the use of the "Detoxifier" by men or women possessing the qualifications required to practice the art of healing, and it does not appear to have been sold by petitioners to individuals for use upon themselves.

█ But the Commission has in no way attempted to prevent the sale of the instrument in interstate commerce, or to restrict or limit its use for the purpose for which it is designed, and much of the argument before us is directed to matters which are not for our determination. The statute which is controlling here provides that "The findings of the Commission as to the facts, if supported by evidence, shall be conclusive," 52 Stat. 112, 113, 15 U.S.C.A. § 45(c), and it is not within our province to try the issues of fact de novo. The order of the Commission is confined entirely to prohibiting the use by petitioners of certain specified representations and nomenclature in their advertisements to induce the sale and use of their product, and on the fact issue our inquiry can extend only to the question whether the Commission's findings are supported by evidence.

That the petitioners did disseminate and cause to be disseminated advertisements concerning their device to induce its sale and use, containing the statements and representations and conveying the implications found by the Commission, we determine to be amply sustained by the testimony. Aside from such of them as are descriptive of the mechanical operation of the device, the representations relate to the successful treatment of diseases, ailments and infirmities of the sick, and are, therefore, in a field of knowledge as to which it is universally recognized that laymen and the general public are not informed comparably with those who have devoted themselves to specialized studies. Accordingly, in these proceedings after petitioners' device had been introduced and its operation explained and the representations in advertisements established, three physicians were called by the Commission who testified as expert witnesses. Their studies and experience were disclosed at length and they were undoubtedly physicians of profound learning and wide experience in their profession. They gave evidence in support of each of the items of the cease and desist order which is here involved. In their opinion each of the statements which the order prohibits the petitioners from disseminating is false, the designation of the device "Detoxifier" is deceptive, and the advertised claim that the device accomplishes "hydro-surgery" is misleading and untrue.

█ The petitioners, on their part, called two witnesses who were duly licensed to practice as chiropractors whose studies and experience were fully disclosed. They stated their opinions as to the capacity of the "Detoxifier" for successful treatment of the sick which in many respects were opposed to those of the three physicians. The Commission did not find, nor does this court, that they were not qualified expert witnesses. The petitioners also called several lay witnesses who had been sick and had been treated with the device and felt they had benefited. But the evidence as a whole presented for determination the issue of fact whether the representations were false, misleading or deceptive as charged. Such determination required consideration of the testimony of the experts and decision upon conflicts between them in a field where there are few absolutes readily demonstrable. But such difficulties suggest no reason to deny the Commission's power to resolve the fact issue. Alberty v. Federal Trade Commission, 9 Cir., 118 F.2d 669, 670, certiorari denied, 314 U.S. 630, 62 S.Ct. 62, 86 L.Ed. 506; Aronberg v. Federal Trade Commission, 7 Cir., 132 F.2d 165, 170; Neff v. Federal Trade Commission, 4 Cir., 117 F.2d 495, 497; Dr. W. B. Caldwell, Inc., v. Federal Trade Commission, 7 Cir., 111 F.2d 889, 891; Justin Haynes & Co. v. Federal Trade Commission, 2 Cir., 105 F.2d 988, 989, certiorari denied 308 U.S. 616, 60 S.Ct. 261, 84 L.Ed. 515; E. Griffiths Hughes, Inc., v. Federal Trade Commission, 2 Cir., 77 F.2d 886, 887,

certiorari denied 296 U.S. 617, 56 S.Ct. 137, 80 L.Ed. 438; Federal Trade Commission v. Standard Education Society, 302 U.S. 112, 58 S.Ct. 113, 82 L.Ed. 141; Quality Bakers of America v. Federal Trade Commission, 1 Cir., 114 F.2d 393; Benton Announcements v. Federal Trade Commission, 2 Cir., 130 F.2d 254; Great Atlantic & Pacific Tea Co. v. Federal Trade Commission, 3 Cir., 106 F.2d 667, certiorari denied 308 U.S. 625, 60 S.Ct. 380, 84 L.Ed. 521, rehearing denied, 309 U.S. 694, 60 S.Ct. 466, 84 L.Ed. 1035; Kidder Oil Co. v. Federal Trade Commission, 7 Cir., 117 F.2d 892; Keller v. Federal Trade Commission, 7 Cir., 132 F.2d 59; Cf., Arkansas Wholesale Grocers' Association v. Federal Trade Commission, 8 Cir., 18 F.2d 866, 870, certiorari denied 275 U.S. 533, 48 S.Ct. 30, 72 L.Ed. 411.

■ Petitioners contend that no weight should be given to the opinions expressed by the three physicians whom the Commission called, because none of them had seen or used the device or observed its results and the argument is made that they did not understand it. But the proof is clear that the physicians had read the descriptions of the device and its operation. There was a physical example of it in evidence, and a printed manual describing it and its operation with meticulous exactness, in addition to extensive description by witnesses, and nothing in the record suggests that it embodies any mysterious or unknown elements. The definition and description of it by the Commission in its findings (paragraphs five and six) appears to us accurate and sufficient as we have compared it with the device and the testimony, and we see no reason to doubt that the physicians fully understood its functioning and gave their opinions as to what it would not do in the field of therapeutics with full appreciation of what it is and how it works. The mere fact that none of the Commission's medical witnesses had actual experience with the Detoxifier or were possessed of data as to what could be expected from it on the basis of clinical observation, does not nullify the weight attached to their testimony as qualified physicians, based on their general knowledge of medicine, that the Detoxifier could not perform the cures claimed for it. Neff v. Federal Trade Commission, 4 Cir., 117 F.2d 495, 496, 497; Fulton Co. v. Federal Trade Commission, 9 Cir., 130 F.2d 85, 86; Dr. W. B. Caldwell, Inc., v. Federal Trade Commission, supra; Justin Haynes & Co. v. Federal Trade Commission, supra; Cf. Goodwin v. United States, 6 Cir., 2 F.2d 200, 201.

As pointed out in Neff v. Federal Trade Commission, supra [117 F.2d 497]:

"The actual question now presented is whether the testimony of the six experts who testified for the Commission can be considered substantial evidence in view of their lack of actual experience in the use of the petitioner's preparation, as compared with the conflicting statements of doctors who had administered Glantex to their patients. We think that the evidence is sufficient to support the Commission's finding. All of the experts were well qualified to speak upon the subject; and their opinions, though based only upon their general medical and pharmacological knowledge, constituted substantial evidence tending to show that the representations of the petitioner were not justified."

■ The injection of water into the body through the rectum is not a novel but an ancient practice, and the physicians disclosed their familiarity with the effects of such operations. They were unanimous and firm in the opinion that the benefits are narrowly limited, whereas the petitioners' advertisements would induce the purchaser of their device to build up a practice in the treatment of the listed diseases around the machine. The fundamental vice of inducing belief that benefits are absolute and general which in truth and fact are limited, uncertain, rare or nonexistent, pervades the whole body of petitioners' advertising, and the findings that the matter prohibited by the order is false are supported by the evidence of the physicians whose learning and experience entitle them to credence.

■ Petitioners have complained of misconduct of the trial examiner in interrupting their examination and cross-examination of witnesses and in preventing the introduction of their competent testimony, and examination of the record convinces that his conduct of the hearing is deserving of criticism. There were needless interruptions and interferences by him which impeded the production of petitioners' evidence. But petitioners were represented by able counsel, and careful study of the whole proceeding has convinced that although improperly impeded in several instances, peti-

tioners were not finally prevented from full and complete presentation of their case and all the evidence they relied on.

The ruling of the trial examiner that an address made by Dr. Anthony Bassler before the 1936 session of the American Congress of Physical Therapy offered in evidence by petitioners was not competent, was not prejudicially erroneous. The doctor was not a witness subject to cross-examination, and his address, which has been included in the record and examined, lends no support to any conclusion contrary to that of the Commission.

Petitioners' contention that their use of the name "Detoxifier" is permissible because it "has been used as a trade-mark to designate their product", can not be sustained. A trade-mark "is not a license to engage in unfair competition," Federal Trade Commission v. Real Products Corp., 2 Cir., 90 F.2d 617, 619, nor is it an "unlimited sanction" to use the product to deceive, Fluegelman & Co. v. Federal Trade Commission, 2 Cir., 37 F.2d 59, 61. The test of petitioners' conduct is not "Whether a trade-mark may have been registered, but whether the method of using it falls within the prohibition of the Federal Trade Commission Act," which forbids the use of "misleading trade-marks." Fluegelman & Co. v. Federal Trade Commission, supra; Federal Trade Commission v. Real Products Corp., supra; Marietta Mfg. Co. v. Federal Trade Commission, 7 Cir., 50 F.2d 641, 642; Federal Trade Commission v. Kay, 7 Cir., 35 F.2d 160, 162, certiorari denied 281 U.S. 764, 50 S.Ct. 463, 74 L.Ed. 1173. See also, Federal Trade Commission v. Winsted Hosiery Co., 258 U.S. 483, 494, 42 S.Ct. 384, 66 L.Ed. 729; Brougham v. Blanton Mfg. Co., 249 U.S. 495, 499, 39 S.Ct. 363, 63 L.Ed. 725.

Nor do we find merit in petitioners' contention that the proceeding and order of the Commission were not "to the interest of the public" within 15 U.S.C.A. § 45(b). Although some of petitioners' advertised statements were directed to members of the healing profession and the device is not sold to the lay public, the findings of the Commission of the manner in which petitioners disseminated them and caused them to be disseminated, and that their dissemination tended to and had the capacity to mislead and deceive a substantial portion of the public into buying and undergoing treatment with the device, are supported in the evidence. The existence of a public interest here rests on the deception practiced upon the public. Federal Trade Commission v. Royal Milling Co., 288 U.S. 212, 53 S.Ct. 335, 77 L.Ed. 706; See National Silver Co. v. Federal Trade Commission, 2 Cir., 88 F.2d 425. The Commission found that petitioners "also supply to purchasers of their machine, advertising to be distributed by such purchasers to the public," and thus the fact that the advertising representations of the petitioners as to the Detoxifier "goes to doctors, mostly chiropractors," does not negate the existence of a specific and substantial public interest, for it is clear that the deception of patients who present themselves to purchasers of the machine and undergo treatment involving its use as a result of circulation by the purchasers of the deceptive and misleading literature furnished them, involves the public interest. The author of false, misleading and deceptive advertising may not furnish customers with the means of misleading the public and thereby insulate himself against responsibility for its deception. Cf. Federal Trade Commission v. Winsted Hosiery Co., 258 U.S. 483, 493, 42 S.Ct. 384, 66 L.Ed. 729; Warner & Co. v. Lilly & Co., 265 U.S. 526, 530, 44 S.Ct. 615, 68 L.Ed. 1161; Chicago Silk Co. v. Federal Trade Commission, 7 Cir., 90 F.2d 689, 691, certiorari denied 302 U.S. 753, 58 S.Ct. 281, 82 L.Ed. 582; Masland, etc., Co. v. Federal Trade Commission, 3 Cir., 34 F.2d 733, 736; Marietta Mfg. Co. v. Federal Trade Commission, 7 Cir., 50 F.2d 641, 642; Federal Trade Commission v. F. A. Martoccio Co., 8 Cir., 87 F.2d 561, 564, certiorari denied 301 U.S. 691, 57 S.Ct. 794, 81 L.Ed. 1347.

We find the proceedings by the Commission were to the interest of the public and its order supported by the evidence. We affirm it and direct issuance of order commanding obedience to its terms.