**FRESH GROWN PRESERVE CORPORATION et al. v. FEDERAL TRADE COMMISSION.**

No. 51.

Circuit Court of Appeals, Second Circuit.

Feb. 16, 1942.

W. T. Kelley, Chief Counsel, Federal Trade Commission, Martin A. Morrison, Asst. Chief Counsel, James W. Nichol, and Earl J. Kolb, Sp. Attys., all of Washington, D. C., for respondent.

Louis Halle, of New York City (Edward Halle, of New York City, on the brief), for petitioners.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This petition, under 15 U.S.C.A. § 45(c), puts in issue for purposes of review an order made by the Federal Trade Commission requiring the petitioners to cease and desist from labelling, marking or advertising their products as "preserves," or "pure preserves" unless they contain a fruit content in proportion to sugar of at least 45 to 55 by weight; from representing that their products, not having such proportions, are "preserves" or "pure preserves"; and from representing that their products are composed of named fruits when in fact they contain a mixture of fruits other than those stated. The pertinent part of the order appears in the margin.[1]

The order was made after hearing and report by a trial examiner on a complaint by the Commission. The complaint charged that all the petitioners were selling and distributing in interstate commerce to wholesale and retail dealers various kinds of fruit "preserves" which were represent-ed by the petitioners to be "pure fruit preserves" by means of labels, tags and markers attached to the jars and containers in which the preserves were packed; that the preserves were not preserves or "pure fruit preserves" within the popular meaning of those words in that they did not have a fruit content of at least 45 pounds of fruit to 55 pounds of sugar; and that such products contained mixtures of fruits other than as represented by the petitioners. It was further charged that the petitioners also made such false representations by means of advertising and sales literature. And it was alleged that, as a direct result of such conduct by the petitioners, trade had been unfairly diverted to the petitioners from their competitors which injured competition in interstate commerce in violation of the provisions of the Federal Trade Commission Act, 15 U.S. C.A. § 45.

The petitioners answered the complaint by admitting that they were engaged in interstate commerce in selling fruit preserves in competition with others so engaged; that they labelled their products "pure fruit preserves"; and denied that they did any advertising. They admitted that the terms "fruit preserves" and "pure fruit preserves" were synonymous in the trade but denied that they were commonly understood to mean a product made from at least 45 pounds of fruit to 55 pounds of sugar; and denied the allegation that their products were not fruit preserves or pure fruit preserves within the popular meaning and acceptance of those terms. They denied that a fruit preserve was known and understood by the trade and purchasing public as a product prepared or manufactured in the above proportion of fruit to sugar; that their products contained any mixture of fruits other than as specified; and also denied generally any violation of the Act.

Two affirmative defenses were alleged. The first of them appears to have been

---

[1] "(1) Using the terms 'preserves' or 'pure preserves' on labels, tags, markers, or in advertising material, or in any other manner, to in any way designate, describe or refer to preserve products which are not prepared from a mixture of clean, sound fruit with sugar in the proportion of at least 45 pounds of fruit to 55 pounds of sugar cooked to an appropriate consistency;

"(2) Representing, in any manner, what-soever, that a product which contains a fruit content in a proportion of less than 45 pounds of clean, sound fruit to 55 pounds of sugar is a pure preserve or a preserve, or is anything other than an imitation or substandard preserve;

"(3) Representing, in any manner whatsoever, that respondent's products are composed of certain specified fruits when in fact, such products contain a mixture of fruits other than those represented."

abandoned and will be disregarded. The second was to the effect that the alleged acts of the petitioners are not, if proved, violations of the Federal Trade Commission Act but that they at most call for proceedings against the petitioners only under the Food and Drug Act, 21 U.S.C.A. § 1 et seq.

The evidence introduced was sufficient to support findings which the Commission made to the effect that all the material allegations in the complaint, except as to advertising, were proved; and the petitioners now rely (1) upon error in the exclusion of evidence and the curtailment of the cross examination of witnesses who testified as to the existence of a standard formula of not less than 45 pounds of fruit to 55 pounds of sugar in the manufacture of fruit preserves; (2) upon failure of evidence of advertising; and (3) upon the affirmative defense that if their conduct subjects them to any proceedings at all such proceedings must be under the provisions of the Food and Drug Acts.

■ We will deal with this affirmative defense first. It is based on the contention that, as the definition of "false advertisement" in § 15(a) of the Act, 15 U.S.C.A. § 55 (a), excludes labelling, and petitioners have at most but labelled their products, they cannot by so doing have violated the Federal Trade Commission Act. If they are right, of course the Commission had no jurisdiction. This argument, however, fails to take due account of two things. One is that the petitioners' conduct as found by the Commissioner amounted to unfair methods of competition in commerce in violation of § 5 of the Act, 15 U.S.C.A. § 45, and the other, that the definition of false advertisement in §15 is expressly limited to that term as used in §§ 12, 13 and 14, 15 U.S.C.A. §§ 52–54. The courts have repeatedly upheld the jurisdiction of the Commission to prevent unfair competition by means of false labelling and misbranding regardless of the kind of the product. Federal Trade Comm. v. Winsted Hosiery Co., 258 U.S. 483, 42 S.Ct. 384, 66 L.Ed. 729; Royal Baking Powder Co. v. F. T. C., 2 Cir., 281 F. 744; Federal Trade Comm. v. Morrissey, 7 Cir., 47 F.2d 101; Federal Trade Comm. v. Good-Grape Co., 6 Cir., 45 F.2d 70. The last three of the cited cases dealt with unfair competition in the sale of food products. Since the Wheeler-Lea amendment of March 21, 1938, 15 U. S.C.A. § 52 et seq., we have three times upheld this jurisdiction of the Commission. Fioret Sales Co., Inc., v. F. T. C., 2 Cir., 100 F.2d 358; Justin Haynes & Co., Inc. v. F. T. C., 2 Cir., 105 F.2d 988; Parfums Corday, Inc. v. F. T. C., 2 Cir., 120 F.2d 808. One of these cases dealt with a drug and the other with cosmetics. See, also, Federal Trade Commission v. Kay, 7 Cir., 35 F.2d 160, another drug case.

■ The amendment to § 5, 15 U. S.C.A. § 45, of the Act did not modify the term "unfair methods of competition in commerce" but made unlawful what were called "unfair or deceptive acts or practices in commerce" and by so doing enlarged instead of lessened the scope of the jurisdiction of the Commission. The additions found in §§ 12 to 15, inclusive, were also to give the Commission greater control over the advertising of food, drugs, cosmetics and the like by providing for criminal action as well as injunction; and only in proceedings under such sections is the definition of false advertisement in § 15 relevant, not in a proceeding like this under § 5.

The only proof of advertising was the interstate sending by the petitioners of price lists to their customers in the wholesale and retail trade describing their products as pure fruit preserves and the representations to like effect by salesmen to such customers. We need not now decide whether that was advertising in violation of §§ 12 to 15, inclusive. Like false labelling, it may have been deceptive and have amounted to unfair competition under § 5 and we need now be concerned with nothing more.

But whether anything the petitioners did was deceptive and in violation of § 5 depends basically upon whether the proceedings which resulted in the finding that there was a known standard for the manufacture of fruit preserves were conducted without harmful error. We do not think they were and consequently there must be a remand to the Commission for findings after hearings which do afford the petitioners a fair opportunity to develop all the pertinent facts. Fashion Originators Guild v. F. T. C., 2 Cir., 114 F.2d 80, 83.

■ During the hearings before the examiner the petitioners attempted to make it appear that the addition of pectin during the manufacture of preserves, a practice

which has prevailed for years in both commercial and domestic preserve making, changed the requirement for a fixed proportion of sugar to fruit and made it impossible fairly to arrive at the standard the Commission found to have been established. A Dr. Osborn who had testified to this standard had stated on direct examination that some pectin was added in the commercial manufacture of preserves and that the usual domestic practice was to use a cup of fruit to a cup of sugar. On cross examination the attempt to examine him regarding the home use of a pectin product sold under the trade name of·"Certo" was blocked by objections the examiner sustained. The purpose was to show that the recipe widely distributed with this product called for the use of less fruit in proportion to sugar than he had previously testified was used in the home. Similar efforts to show that the standard the Commission found was by no means to be accepted as such because of the varying use of added pectin were made during the examination of witnesses Wallace, Kirkpatrick and Hader and were frustrated in the same way. The evidence which the petitioners tried to place before the examiner was all relevant and of great importance in deciding what was really the most important issue. This cutting off the right of the petitioners to make clear what the decisive facts were prevented a fair hearing and makes it necessary to send the case back to the Commission for a finding as to a standard after giving the petitioners an opportunity to introduce for consideration whatever material and relevant evidence on that subject they may offer.

It is immaterial that the Department of Agriculture did promulgate a regulation on September 5, 1940, which was in effect when the Commission issued this cease and desist order on September 20, 1940, establishing for preserves or jams a standard content, with stated optional variations, of not less than 45 parts of fruit ingredients by weight to 55 parts by weight of optional saccharine ingredients. That was not an effective standard during the time of the alleged violations by the petitioners of the Federal Trade Commission Act and there is no proof that the petitioners have failed to comply with the regulation since it was promulgated.

Cause remanded for proceedings in accordance with this opinion.