[Civ. No. 2860.   Fourth Dist.   Jan. 15, 1943.]

MAE GOULD et al., Respondents, v. ESCONDIDO VALLEY POULTRY ASSOCIATION (a Corporation), Appellant.

Von Seggern & Hawkes for Appellant.

Vincent Whelan for Respondents.

MARKS, J.—This is an appeal from a judgment for plaintiffs against the Escondido Valley Poultry Association rescinding a contract of purchase of real property because of fraud, for the return of money paid by them, together with the enhanced value of the property by reason of improvements placed on it before discovery of the fraud, and also from an order vacating a judgment for defendant Escondido Valley Poultry Association rendered on its cross-complaint to quiet title to the property. Defendant James Badgley was not served with summons and made no appearance in the action. We will refer to the Escondido Valley Poultry Association as the defendant.

Plaintiffs entered into negotiations for the purchase of the property in 1936 which terminated in a conditional sales contract dated April 1, 1936, whereby they agreed to purchase the property for $1,880. They paid $500 on the purchase price, $126.52 in progress payments on the principal and $125.38 on the interest accruing. They also expended about $1,500 in making permanent improvements in the buildings and other improvements which the trial court found had enhanced the value of the property in the sum of $500. They occupied the property for twenty-two months. The reasonable value of this occupancy was found to be $250. The judgment rescinded the contract and awarded plaintiffs $1,001.90.

The fraudulent representations upon which plaintiffs rely were made by James Badgley, who acted as agent for defendant in making the sale.

Mrs. Gould was engaged in the business of raising chickens and turkeys. As Ray Gould, her husband, was working for contractors and away from home for considerable periods of time, the negotiations for the purchase were conducted and the contract of purchase was signed by Mrs. Gould.

Mrs. Gould advertised in an Escondido paper for a small tract of land having a good water supply which would be suitable for raising poultry. She was first shown this property by a real estate agent who had his place of business in Escondido. A few days later she met Badgley on the property and he showed her the boundaries of the five acres and made the representations, according to Mrs. Gould, upon which she relied in making the purchase.

The evidence concerning these representations is sharply conflicting. As the trial court found in accordance with the testimony of Mrs. Gould we need not concern ourselves with contrary evidence produced by defendant as conflicts in the evidence and the credibility of witnesses generally are questions addressed to the trial court and settled there and not on appeal.

Mrs. Gould detailed her conversation with Badgley in part as follows:

"I said, 'Well, Mr. Badgley,' I said, 'I am convinced that you have a good well here,' but I says, 'The condition of these buildings I would consider them as firewood.' 'Yes,' he said, 'That is right. The buildings are very old,' he said, 'And they are just in a tumbledown state; the roof is all caving in; it looks as though the walls are all caving in.' He says: 'It is an old building,' but he says, 'You get a very fine five acre tract here.' . . . I said, 'What else have you got to show for value?' He said, 'Let us skip the buildings completely; you have got five acres of land here, if you try to buy good land like this anywhere around Escondido, it will run you at least four hundred dollars an acre.' I said, 'You consider now that this is good soil?' 'Yes,' he says, 'This is good deep fine soil.' I said, 'In case we could not make a go of the poultry business, the market is very weak at present, what could we raise on these five acres to make a living, we are trying to make our living with poultry?' He said, 'You can raise anything on this land except citrus.' He said, 'It is a little too cold in here for citrus.' He says, 'This is good, deep soil, and it is rich soil, it has been used for a poultry ranch for many years,' and he said, 'the soil is very good.' I said, 'For instance, if we do not make a go of poultry, would this soil be suitable for growing walnuts or good vineyards?' 'Yes,' he said, 'there have been some very fine vineyards grown here,' and he says, 'As far as walnuts, you can grow excellent walnuts here'; he says, 'it is good deep soil; lots of water.' . . . Well, just

that I went over that soil with Mr. Badgley. He picked up some of the soil, showed me what nice fine, sandy soil it was there. He said it was excellent rich soil, and deep, he said we could go down there four feet, that deep, the roots of any trees would spread and then the lower place had lots of water. . . . He said, 'Yes, this is excellent deep soil. You can grow fine walnuts.' And he said, 'Mrs. Young, what about these walnuts over on Gutchell's?' She said, 'They are very fine.' He took me across this five acre land to Getchell's place on the line and he said, 'I will show you the kind of walnuts that you can grow on this land.' Well, I went with him, and my son and I walked across the alfalfa patch. Mrs. Young did not go with us. She went in the house. We looked at the walnuts and cracked some of them. They were very fine large walnuts, with thin shells. He said, 'You can plow this land up and plant it to walnuts if you don't make a go with the turkeys, because you have a wonderful water supply,' which was correct. So I bought the property with the understanding that it was good deep soil and that I could plow it up."

The walnut trees on the Gutchell place were about 100 feet north of the north line of the property involved here.

Plaintiffs moved onto the property in April, 1936, and commenced improving the buildings on it. Mr. Gould dug a pit for a septic tank. At that point the top soil was about 18 inches deep. Underneath was a hard layer which one witness described as hardpan and others a hard packed clay. Mr. Gould had to blast this layer with dynamite to get through it to a depth of four and one-half feet. Mrs. Gould testified that this pit was near a road and that she and her husband did not suspect that the shallow top soil with the hard layer underneath extended over the rest of the place because of the existence of the road.

Mrs. Gould broke a bone in one of her legs in the summer or early fall of 1937. She was disabled for several months and could not tend to her poultry business. With her consent defendant took over her poultry on a chattel mortgage which had been given for feed. She advertised the place for sale and a man from Long Beach came to Escondido to inspect it with the object of buying it. He, accompanied by plaintiffs' son, tested the soil in various places. The son testified that the top soil was from one to two feet deep; that underneath was a layer of hardpan.

Defendant urges that the testimony of this youth should

have been excluded and should be given no credence because of his years and lack of experience. This witness was young and his sole experience in soils was in an agricultural course in the high school, where various soils, including hardpan, had been studied and samples inspected. This objection goes to the weight to be given the evidence and not to its admissibility as the witness showed some knowledge of types of soil including hardpan. It is the province of the trial court to pass on the weight to be given evidence.

Previous to the sale to plaintiffs, defendant had attempted to sell the property to the Mrs. Young mentioned in the foregoing testimony. Her purchase was dependent upon getting a loan from a bank. Badgley testified that when he and Mrs. Gould first went on the property Mrs. Young handed him a letter from the bank in which the loan was refused because the top soil was shallow and was underlaid with a stratum of hardpan. He testified that he read the letter and handed it to Mrs. Gould who also read it. She denied seeing the letter until 1938. Thus the finding that defendant knew that the representation that the top soil was deep, at least four feet deep, was false and was known to be false by defendant through its agent, has evidentiary support as does the finding that plaintiffs had no knowledge of the falsity of that representation until the fall of 1937.

There is evidence that walnuts cannot be grown successfully on land with a shallow top soil with hard clay or hardpan underneath.

Defendant urges that plaintiffs should not be permitted to recover because of their delay in attempting to rescind the contract. Mrs. Gould first learned of the character of the soil in the fall of 1937, when she was still unable to walk without the aid of crutches. She unsuccessfully communicated with officers of defendant in an effort to adjust the wrong she believed had been done her. When she was able to walk she renewed her demands in personal interviews with officers of defendant. Finally in 1938, after her efforts to compromise the claim had been rebuffed, she attended a meeting of the board of directors and delivered a notice of rescission. The trial court found that the notice of rescission contained unreasonable demands on the part of plaintiffs but that no objection to the form of the notice of rescission was made by defendant. Further, if Mrs. Gould's testimony be given full weight, no notice to rescind would have been accepted by defendant unless it had been upon

terms permitting it to cancel the contract, retain the property and the value of the improvements made by plaintiffs as well as the money paid by them. Under these circumstances the finding against laches, and that further notice of rescission was excused, finds evidentiary support.

Defendant urges that the statements of Badgley concerning the depth of the soil and its suitability for walnut culture were mere expressions of opinion and "puffing talk" on the part of an agent that furnish no basis for rescission and an action for fraud. Perhaps this may be true as to the representations concerning the suitability of the soil for walnut culture, but it is not true concerning the representations concerning the depth of the soil.

The case of *McMahon* v. *Grimes,* 206 Cal. 526 [275 P. 440], is factually similar to the instant case as far as the representations concerning the depth of the soil are concerned. There the Supreme Court quoted from *Powell* v. *Oak Ridge Orchards* Co., 84 Cal.App. 714 [258 P. 636], as follows:

"The statements as to the character of the soil and as to the water supply were clearly misrepresentations of fact."

In the same case it was said: "That representations regarding the character and nature of the soil of land sold are statements of a fact and when fraudulently made will justify a rescission of the sale is supported by an unbroken line of authorities in this state. Particularly is this so when the trial court, as it has in the present action, found that such representations were statements of fact and not the expression of an opinion. (*Groppengiesser* v. *Lake,* 103 Cal. 37 [36 P. 1036]; *French* v. *Freeman,* 191 Cal. 579 [217 P. 515]; *Delta Land etc. Co.* v. *Perry,* 57 Cal.App. 314 [207 P. 393]; *Stone* v. *McCarty,* 64 Cal.App. 158 [220 P. 690]; *Dickey* v. *Dunn,* 80 Cal.App. 724 [252 P. 770])." See, also, *Neff* v. *Engler,* 205 Cal. 484 [271 P. 744]; *Gammon* v. *Ealey & Thompson,* 97 Cal.App. 452 [275 P. 1005].

Defendant seeks to distinguish the instant case from those cited, and others, by arguing that in those cases the injured parties were inexperienced, while here, Mrs. Gould had previously owned land and had some knowledge of walnut culture. This argument is based on a fragile foundation. Mr. and Mrs. Gould had owned land in San Diego County on which a few walnut trees were growing. During her youth she had lived on a farm in Canada. She had read some government publications on walnut culture. There is nothing

to indicate that either of plaintiffs had any knowledge of the character of the land around Escondido or in the locality of the land they were buying. The representation as to the character and depth of the soil was a representation of a material fact, was a positive representation and was false. It was relied upon by plaintiffs to their injury. In *Neff* v. *Engler, supra,* it was said:

"In Bishop on Noncontract Law, section 330, it is said: That plaintiff is too credulous is not generally a defense. 'The test of the representation is its actual effect on the particular mind, whether it is a strong and circumspect mind, or one weak and too relying.' (See, also, Bigelow on Frauds, 524.) 'Every contracting party has an absolute right to rely on the express statement of an existing fact, the truth of which is known to the opposite party and unknown to him, as the basis of a mutual agreement; and he is under no obligation to investigate and verify statements to the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith.' (*Mead* v. *Bunn,* 32 N.Y. 275.)"

Defendant filed a cross-complaint with its answer. No answer to this pleading was filed and plaintiffs' default was entered and judgment on the cross-complaint was taken against them. More than a year after the entry of this judgment plaintiffs moved to vacate the judgment, set aside the default and permit them to answer. The judgment was vacated but they were not permitted to file an answer.

Defendant urges this was error, maintaining that such a motion must be made within six months under the provisions of section 473 of the Code of Civil Procedure. If the motion were made and granted under the provisions of that section the argument might deserve serious consideration. However, there is nothing in the record to force such a conclusion. There is no bill of exceptions of the proceedings taken at that time and no part of the reporter's transcript is devoted to that subject. We are furnished, in a supplemental clerk's transcript, with a copy of the minutes of the trial court vacating that judgment. There is nothing there to indicate that the order was made under the provisions of the code section. There are grounds on which a judgment may be vacated independent of the section, and after the expiration of six months, such as extrinsic fraud. There is a strong presumption in favor of the regularity of the proceedings of a court of record which must prevail until overcome. In the absence of any

showing to the contrary we must presume that the order vacating the judgment was regularly and lawfully made.

The judgment is affirmed.

Barnard, P. J., concurred.

Mr. Justice Griffin, being disqualified, does not participate herein.