## GULF OIL CORPORATION v. FEDERAL TRADE COMMISSION.

### No. 11028.

Circuit Court of Appeals, Fifth Circuit.

June 12, 1945.

Rehearing Denied July 5, 1945.

---

Alex F. Smith, of Shreveport, La., John E. Green, Jr., of Houston, Tex., and J. S. Atkinson, of Shreveport, La., for petitioner.

Joseph J. Smith, Jr., Asst. Chief Counsel, Federal Trade Commission, of Washington, D.C., for respondent.

Before HOLMES, McCORD, and LEE, Circuit Judges.

LEE, Circuit Judge.

After a hearing upon a complaint charging the Gulf Oil Corporation with engaging in unfair and deceptive acts and practices in interstate commerce in violation of the Federal Trade Commission Act,[1] an order was issued by the Federal Trade Commission forbidding the use of certain statements in advertising Gulf Livestock Spray, an insecticide manufactured by the Gulf Oil Corporation and sold in interstate commerce. The case is brought here on petition by the Gulf Oil Corporation to review and set aside the Commission's order.

The petitioner is a Pennsylvania corporation carrying on business in Texas, Georgia, and Florida. To induce the purchase of the spray, it advertised the product in magazines, newspapers, circulars, and other advertising media which it caused to be distributed among the purchasing public generally throughout the United States. Among and typical of the statements and representations appearing in such advertisements were the following:

"C. W. Wilkinson has a fine herd of 280 Jerseys on his dairy farm at Trussville, Ala. Mr. Wilkinson says: 'Gulf Livestock Spray is a lot cheaper to use than other sprays. This is because a light spraying of it gives a cow complete protection.'"

"Gulf Livestock Spray kills bloodsucking flies, lice, ticks—repels stable and horn flies. One spraying lasts all day."

"Changes to Gulf Livestock Spray—gets 175 lbs. more milk a day! Says C. E. Grimes of Fredericksburg, Pa., 'I am very proud of my herd of 90 Holstein and Guernsey cows. They are first-class milk producers. My milk production used to average 2,300 lbs. a day during the summer months. Since I started using Gulf Livestock Spray it has average 2,475 lbs. The increased yield of milk more than pays for the cost of the spray. I recommend this spray as the best that money can buy.'"

"Mr. Hamilton do you want 'M-M'? * * * Sure you do, for 'M-M' means More Milk which means More Money. Gulf Livestock Spray will get you 'M-M.' It will assure you of healthy, contented cows and healthy cows give more milk, hence, increased profits."

These statements and representations and others of similar import, the Commission found, falsely represented, directly or by implication, that Gulf Livestock Spray afforded complete protection to livestock from all insects and that its use would cause milk production to increase and cows to be healthier; and that said misrepresentations were calculated to deceive.

---

[1] The pertinent provisions of the statute are as follows:

"Sec. 5(a) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful.

"The Commission is hereby empowered and directed to prevent persons, partnerships, or corporations * * * from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." 52 Stat. 111, 112, 15 U.S.C.A. § 45(a).

"(c) * * * The findings of the Commission as to the facts, if supported by evidence, shall be conclusive." 52 Stat. 112, 113, 15 U.S.C.A. § 45(c).

The petitioner here urges that:

1. The Commission erred in considering the testimony of "public witnesses" of the meaning conveyed to them by certain words and phrases in petitioner's advertisements;

2. The meaning of petitioner's advertisements is a question of law, not a question of fact;

3. The Commission's finding that petitioner was falsely advertising Gulf Livestock Spray is not supported by substantial evidence; and

4. Petitioner's representations are "puffing", hence excusable.

At the hearing before the Commission several lay witnesses were asked, over the objection of the petitioner, the meaning conveyed to them by the advertisements of the beneficial results to be obtained from the use of Gulf Livestock Spray. Petitioner urges that these questions called for the opinion of the witnesses with respect to a matter to be decided by the Commission, and cites authorities that deal in the main with the impropriety of such questions where the issue involved the interpretation of contracts.

■■■ The purpose of the law is the protection of the public, and the hearing was had in the public interest. No contract was before the Commission for interpretation. The issue was the impression made or likely to be made upon the reading public by the petitioner's representations of the good qualities of its product, as conveyed in the advertisements. The testimony of witnesses drawn from the general public of the impressions made upon their minds upon reading the advertisements was admissible. This procedure in investigations of this kind has been in use over a period of years, and has received the sanction of the courts.[2]

■■■ "The appraisal of the evidence and the inferences to be drawn from it are for the Commission, not the courts." Federal Trade Commission v. A. E. Staley Manufacturing Co. et al., 324 U.S. 702, 65 S.Ct. 971, 977. The meaning of an advertisement to the public, and whether it is calculated to deceive is a question of fact, and the Commission's conclusion with respect thereto may not be disturbed unless arbitrary or clearly wrong.[3]

■■■ The statute provides that the Commission's findings as to facts, when supported by substantial evidence, are conclusive,[4] and the courts have uniformly so held.[5] That there was substantial evidence to support the Commission's findings in this case may not be seriously questioned. All of the experts—those testifying for the petitioner and those testifying for the Commission—were agreed that a light spraying of the Gulf Livestock Spray would not give a cow complete protection. Not one witness among the number placed upon the stand by petitioner claimed that "one spraying lasts all day." Most of them stated that the spraying gave good results under favorable conditions for some seven to nine hours and fair results for a short time thereafter.

These witnesses were also in accord in their statement that the use of the spray from two to three times daily during the summer months, when the different fly

2 Stanley Laboratories v. Federal Trade Commission, 9 Cir., 138 F.2d 388, 391; Charles of the Ritz Distributors Corp. v. Federal Trade Commission, 2 Cir., 143 F.2d 676, 679; Aronberg v. Federal Trade Commission, 7 Cir., 132 F.2d 165, 167, 168; D. D. D. Corporation v. Federal Trade Commission, 7 Cir., 125 F.2d 679, 681, 682; Ford Motor Co. v. Federal Trade Commission, 6 Cir., 120 F.2d 175, 182; Hall v. United States, 5 Cir., 267 F. 795, 797.

3 Brougham v. Blanton Manufacturing Co., 249 U.S. 495, 499, 500, 39 S.Ct. 363, 63 L.Ed. 725; Leach v. Carlisle, 258 U.S. 138, 140, 42 S.Ct. 227, 66 L.Ed. 511; A. P. W. Paper Co., Inc., v. Federal Trade Commission, 2 Cir., 149 F.2d 424. See also Bates & Guild Co. v. Payne, 194 U.S. 106, 108, 109, 24 S.Ct. 595, 597, 48 L.Ed. 894 ("where Congress has committed to the head of a department certain duties requiring the exercise of judgment and discretion, his action thereon, whether it involve questions of law or fact, will not be reviewed by the courts unless he has exceeded his authority or this court should be of opinion that his action was clearly wrong.")

4 Federal Trade Commission Act, Sec. 5(c).

5 Federal Trade Commission v. Standard Education Society, 302 U.S. 112, 117, 58 S.Ct. 113, 82 L.Ed. 141; Federal Trade Commission v. Algoma Lumber Co., 291 U.S. 67, 73, 54 S.Ct. 315, 78 L.Ed. 655; Federal Trade Commission v. Pacific States Paper Trade Ass'n, 273 U.S. 52, 63, 47 S.Ct. 255, 71 L.Ed. 534; Standard Container Manufacturers' Ass'n v. Federal Trade Commission, 5 Cir., 119 F.2d 262, 265.

pests infesting cows were at their worst, would make the cows more contented and healthy and more productive than would be the case where no preventive measures were used; but all of them stated that this resulted from killing and driving off the fly pests, and that the spray as such neither increased the milk nor insured a healthier, more contented cow. According to the evidence there are a number of insects which are little affected by the spray, and while dairymen and entomologists from various sections of the United States testified to the good results had from the use of the spray, it may not be denied that no one of them testified to results from its use as completely beneficial as those set forth in the advertisements. We think that the Commission's findings[6] with respect to the four advertisements fairly reflect the evidence.

Advertisements having a capacity to deceive may be prohibited.[7] The "law is not made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions." Florence Manufacturing Co. v. J. C. Dowd & Co., 2 Cir., 178 F. 73,

75; Charles of the Ritz Distributors Corp. v. Federal Trade Commission, 2 Cir., 143 F.2d 676, 679.

Petitioner argues that the benefits set forth in the advertisements beyond those actually derived from use of the spray were merely trader's talk or "puffing," hence excusable. "Puffing" refers, generally, to an expression of opinion not made as a representation of fact. 51 C.J. 90; Vavricka et al. v. Mid-Continent Co., 143 Neb. 94, 8 N.W.2d 674, 679; Gould et al. v. Escondido Valley Poultry Ass'n, 56 Cal.App.2d 681, 133 P.2d 448, 451. While a seller has some latitude in "puffing" his goods, he is not authorized to misrepresent them or to assign to them benefits or virtues they do not possess.

"It may be that there was no intention to mislead and that only the careless or the incompetent could be misled. But if the Commission, having discretion to deal with these matters, thinks it best to insist upon a form of advertising clear enough so that, in the words of the prophet Isaiah, 'wayfaring men, though fools, shall not err therein,' it is not for the courts to revise their judgment."[8]

The petition to set aside the order of the Commission is denied. The Commission's

---

[6] "While respondent's product when applied to livestock usually will kill such insects as may be present on the livestock at the time of the application, the product does not afford complete protection as a repellant of other insects which may later seek to attack the livestock. Generally speaking, the degree of effectiveness of the product as a repellant depends upon a number of factors, including the frequency and thoroughness of application, the nature and extent of the insect infestation, weather conditions, etc. As to some insects, the product affords measurable protection for a limited period of time, but as against certain other insects which frequently attack livestock it has little value as a repellant. The Commission therefore finds that while respondent's product possesses substantial merit, it is incapable of affording complete protection to livestock from insects, and that respondent's representations with respect to the effectiveness of the product are erroneous and misleading.

"The Commission further finds from the evidence that the product is incapable of bringing about an increase in milk production or causing cows to be healthy. In

those cases where there has been a decrease in milk production or where cows are unhealthy and such conditions are due to the presence of insects, the use of respondent's product may be of indirect benefit in affording a measure of protection against the insects. Respondent's advertisements, however, are not limited to such indirect benefit and are therefore erroneous and misleading."

[7] Federal Trade Commission v. Algoma Lumber Co., 291 U.S. 67, 81, 54 S.Ct. 315, 78 L.Ed. 655; Charles of the Ritz Distributors Corp. v. Federal Trade Commission, 2 Cir., 143 F.2d 676, 680; D. D. D. Corporation v. Federal Trade Commission, 7 Cir., 125 F.2d 679, 682; Ford Motor Co. v. Federal Trade Commission, 6 Cir., 120 F.2d 175, 181; General Motors Corp. v. Federal Trade Commission, 2 Cir., 114 F.2d 33, 35, 36.

[8] General Motors Corp. v. Federal Trade Commission, 2 Cir., 114 F.2d 33, 36; Charles of the Ritz Distributors Corp. v. Federal Trade Commission, 2 Cir., 143 F. 2d 676, 680; Stanley Laboratories v. Federal Trade Commission, 9 Cir., 138 F.2d 388, 392, 393; Aronberg v. Federal Trade Commission, 7 Cir., 132 F.2d 165, 167.

request that a decree be entered commanding petitioner to obey its order and to comply therewith is granted.