[Civ. No. 4650. Fourth Dist. Feb. 19, 1954.]

ARCHIE STINSON et al., Appellants, v. VIOLA G. BLODGET et al., Respondents.

Miller & Sinclair, Loren Miller and Harold J. Sinclair for Appellants.

Baker, Palmer & Wall for Respondents.

GRIFFIN, J.—Plaintiffs and appellants Archie Stinson and wife brought this action against defendants and respondents Viola G. Blodget, Claude Blodget et al., in which they

allege that defendants claim an interest adverse to that of plaintiffs in certain described real property in Kern County, consisting of two small houses located on two small lots.

The evidence shows that plaintiffs owned the property in question; that certain plumbing was faulty and the city officials required its repair and that plaintiffs needed money; that Mr. Blodget, a real estate agent and friend of plaintiffs, went on plaintiffs' note for $700, as an accommodation endorser or comaker; and that plaintiffs paid him $60 in cash for signing it. Plaintiffs defaulted in payment and Blodget was compelled to satisfy a judgment in favor of the finance company. Several other suits were pending against Archie Stinson. Blodget and plaintiffs had a conference, and to give Blodget some security for the repayment of the monies advanced on behalf of plaintiffs by him and to avoid other creditors realizing on plaintiffs' equity in their home, it was suggested that plaintiffs deed their property to their two sons and that they execute a second trust deed for $1,246, at.8 per cent interest, to Blodget's wife for the money advanced by them, and allow said sum to be paid off at the rate of $20 per month. This arrangement was carried out. There was a first trust deed on the property in the approximate sum of $500, and back taxes were due. Blodget paid an obligation of plaintiffs for $160.69, and other items, all totaling $1,246, the amount of the second trust deed. Included therein was an item wherein Blodget charged plaintiffs $100 for his efforts in the matter and in securing the loan.

Only two payments were made on Mrs. Blodget's trust deed, leaving a balance of $1,219.07. After two or three years' delinquency, the defendant Title Insurance and Trust Company, trustee, gave the sons notice of default. Plaintiffs paid approximately $400, the balance due on the first trust deed, just before foreclosure sale under the second trust deed, at which sale Mrs. Blodget purchased the property for the amount then due on her note.

Plaintiff Archie Stinson testified generally that he was ill and did not remember talking to the defendants about the transaction and did not remember signing the deed to his two sons, but admitted the signature on it was his. He said he was indebted on the first trust deed but was later informed that Blodget had paid this trust deed and it was released because defendants then owned the property. He conceded he owed defendants $672 on the cosigner note to the finance company but stated that he thought Blodget obtained pay-

ment of that amount out of another foreclosure sale. He admitted receiving notice of foreclosure under the second trust deed and that the amount claimed therein "was $1224." He stated that he never talked with Blodget about the amount due or how the title to the property happened to be taken in the sons' names; and that he never authorized his sons to sign any trust deed. He admitted the taxes were not kept up on the property although he knew his sons were receiving some exemption on the taxes by virtue of some military service. He testified to the value of the property at the time of foreclosure as being between $3,500 and $4,000; that he was living on the premises until the foreclosure sale; that he made certain payments on the bills in excess of the amounts which Blodget claimed; and that his sons had made payments on the trust deed. He later admitted on cross-examination, signing certain receipts for money paid in his behalf by Blodget for material furnished to him. It appears that after Stinson regained his health, his sons and their wives, in December, 1950, deeded the property back to Stinson. The notice of default was dated December 8, 1950.

One son testified Blodget came to him and told him of the judgment against his father and Blodget and that he wished to save the property for his father; that if the father would deed the property to the sons they could execute a trust deed for that amount ($605) and pay off the trust deed and note; that he agreed to this and Blodget had the plaintiffs sign the deed; and that he later signed the note and trust deed at a time when he was alone with Blodget in his office; that he did not read it carefully; and that he believed it was for $605 rather than the $1,224 indicated on the face of the note. He now claims no amount was typed in the space indicated for the amount of the note but that the spaces were filled in on the trust deed at the time he signed it. He admitted that Blodget later mailed him a "record of payments in the payment book on the trust deed," indicating that $1,224 was due and that they made one payment on it thereafter. He likewise admitted that Blodget furnished a statement to him of the items making up the sum of $1,224, and later discovered that Blodget had paid a bill or judgment obtained against plaintiffs by the Butler Company, but claims Blodget only paid $150 as the balance due, and that it was then when Blodget said he had charged $100 for his trouble.

The other son admitted going to Blodget's office together with his brother, and stated that his brother had already

signed the note so he "signed it too"; that he did not remember whether the amount was filled in or not at the time but he believed it was for $605. He then testified they did not sign the trust deed at Blodget's office; that it was later taken to their home and signed by him, but he did not remember the amount indicated.

Plaintiff Mrs. Stinson identified the deed from plaintiffs to their sons and admitted she signed it in the presence of her husband and sons; that her sons explained to her what the transaction was, i. e., that the sons were going to pay off the indebtedness which she thought was $600, so she signed the deed.

In rebuttal, Blodget refuted this testimony and specifically testified that all blanks were filled in on the note and trust deed when the parties signed them; that in addition to the payment of the $700 judgment in question he also paid the other obligations mentioned, as well as the first trust deed; that all of these payments could not have been made from the proceeds of a trust deed loan of $605, and that all parties fully understood the transaction.

The prayer of the complaint is that defendants be enjoined from selling the property; that the trust deed be removed as a cloud on plaintiffs' title; that plaintiffs' title thereto be quieted, and for general relief.

Upon the filing of the complaint plaintiffs obtained a temporary order restraining the defendants from disposing of the property pending the determination of the action. Upon a proper showing the restraining order was dissolved and defendants sold the property for $2,000. Subsequently, after trial of the action, the court found that the property was encumbered by a first trust deed for "at least $345"; that a judgment was recovered against Stinson by the Butler Company for $160.69, which Blodget paid; that a judgment was obtained for $700.80 against both Stinson, as maker, and Blodget, as accommodation cosignor, and paid by Blodget; that plaintiffs agreed to and did convey the property to their sons and that they did execute a note and trust deed in the sum of $1,224.60 in consideration of Blodget's satisfying the obligations mentioned; that at the time of sale there was due on the note and second trust deed $1,605.01 principal, interest and costs; and that the sale was made to Mrs. Blodget in said sum on June 4, 1951. The court then found directly against plaintiffs' testimony above mentioned and that plaintiffs had not offered to restore to defendants

any sums paid by them, but retained the benefit of the consideration paid by Blodget for said second trust deed and note, and are, accordingly, estopped to deny their validity; that Viola G. Blodget became the owner in fee of the property by virtue of the sale under the trust deed foreclosure, and that plaintiffs now have no title to it. Judgment was entered accordingly.

Plaintiffs, in propria persona, perfected this appeal. Different counsel now represent plaintiffs. Since the property has been sold the question whether an injunction should be granted restraining the sale has become moot. (*Diederichsen* v. *Sutch*, 47 Cal.App.2d 646 [118 P.2d 863]; *Mitchell* v. *Warren*, 95 Cal.App.2d 594 [213 P.2d 413].) It appears that by reason of the sale of the property by defendants to an innocent third party, some of the other questions presented may be similarly affected. Since, under a declaratory relief action, the court has equity powers (*City of Los Angeles* v. *City of Glendale*, 23 Cal.2d 68, 81 [142 P.2d 289]), we will consider the only questions presented, i. e., (1) the claim that the findings are not sustained by the evidence. We see no merit to this contention. It is apparent that the testimony of plaintiffs only created a conflict in the evidence and the trial court was the sole judge of that conflict. (*Gould* v. *Escondido Valley Poultry Assn.*, 56 Cal.App.2d 681 [133 P.2d 448].) (2) The other claim is that there was no finding that the price for which the property was sold to Mrs. Blodget under the trust deed was adequate. Plaintiffs' pleadings do not allege that the sale price was inadequate. Apparently no such claim was pressed in the trial court. The property was duly advertised for sale by the trustee and plaintiffs, as well as other persons, had an opportunity to bid on it. It was sold to Mrs. Blodget for the amount of the indebtedness. No finding on the subject was therefore necessary to a proper determination of the action. (2 Cal.Jur., p. 234, § 67.)

 Some mention is made in appellants' brief that plaintiffs' agreement to pay an additional $100 to defendants as compensation in securing the loan and handling the transaction for plaintiffs, in addition to the 8 per cent interest they agreed to pay on the note and trust deed, made the loan a usurious one and plaintiffs should have some relief by reason of that fact. The pleadings do not mention this contention and apparently such claim was not made in the trial court. It appears to be raised for the first time on

appeal. Questions of this character may not be so raised. (*Hayward Lbr. & Inv. Co.* v. *Ford,* 64 Cal.App.2d 346, 353 [148 P.2d 689].) In addition, it is not pointed out by plaintiffs wherein the addition of this amount would, in fact, make the loan usurious.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.