[Civ. No. 8709.   Third Dist.   Feb. 1, 1956.]

W. F. SANDERCOCK, Appellant, v. V. B. MINNIS, Respondent.

Sinclair M. Dobbins for Appellant.

Rankin, Oneal, Luckhardt, Center & Hall, C. E. Luckhardt and Leo C. Dunnell for Respondent.

SCHOTTKY, J.—Appellant commenced an action to recover the sum of $8,000 claimed to be due from respondent as a semiannual installment of rent under the terms of a written lease of 320 acres of irrigated pasture land in Solano County, the term of the lease being from April 1, 1952, to November 30, 1956, at a total rental of $80,000, payable at rate of $8,000 semiannually, including $2,000 payable upon execution of the lease.   Respondent paid $2,000 upon the

execution of the lease to be applied to the last payment, and $8,000 when the same became due on May 1, 1952. The second installment of $8,000 became due on September 15, 1952, and the same was never paid. Respondent tendered $6,000 as a balance due and for a complete termination of the lease. Appellant refused and brought the instant suit.

Respondent filed an answer and cross-complaint alleging tender of the sum of $6,000 as the full balance alleged by him to be due under the terms of the lease and that said tender was intended as a rescission or termination thereof, and refusal by plaintiff of said $6,000 so tendered; that representations were made to him by plaintiff, leading up to, and which were alleged to be an inducing factor in, the making of said lease, as to the carrying capacity of plaintiff's said ranch, in that plaintiff represented to defendant that 450 head of cows, with their calves, could be profitably and normally pastured on the ranch, during the grazing and feeding period specified in the lease, that he relied and acted upon said representations in signing the lease, and that he thereafter found, during the grazing months, when cattle up to or near said maximum number above noted, were placed on the ranch, that, in fact, it would support and properly feed not more than 200 cows with calves.

Appellant in his answer to the cross-complaint denied making any such representations to respondent, but admitted that he at all times knew that said ranch would not support and properly feed 450 head of cows with their calves.

The court found that appellant made certain statements that his ranch would carry 450 head of cows with their calves from the month of May to and until October and November of each year, and that he did so falsely and fraudulently, and that in truth and fact said ranch would not support and feed in excess of 200 cows and their calves for the entire number of months specified, and that appellant knew that said ranch would not properly support and properly feed in excess of 200 cows and their calves for the number of months specified, and that were it not for said false representations upon the part of said appellant, respondent would not have entered into said agreement. The court further found that these false and fraudulent representations were relied upon by respondent, and that appellant knew that respondent was so relying. The court further found that there was insufficient proof of damage, and denied respondent any relief therefor.

The court concluded that appellant was not entitled to anything from respondent, that the lease should be cancelled, and that respondent have only his costs of suit from appellant.

Appellant has appealed from the judgment entered in accordance with said findings and conclusions and his principal contention is that the statement that appellant's ranch of 320 acres of permanent pasture would carry 450 head of cows and their calves from the month of May to and until October and November of each year was a pure expression of opinion as to something that would or might occur in the future and was a statement upon which respondent was not entitled to rely as an inducement to his execution of his lease upon the property involved. Appellant also contends that even if respondent was entitled to rely upon it he did not actually do so.

Before discussing the contentions of appellant we shall quote the court's résumé of the evidence, which is amply supported by the record:

"That plaintiff has been an experienced rancher over the years, is now the owner and operator, directly or by lease, of some seven ranches in Solano and adjoining counties, and has been principally in the sheep business, for some years past; that approximately seven years ago, he developed this particular ranch of 320 acres, to irrigated pasture, for cattle and sheep, and that in 1951, it had been leased for cattle pasturage; the defendant has been a building or construction contractor since 1923, and engaged in ranching for the past ten years, at the time he made the lease in question, and then owned and operated a sixty-five acre clover ranch in Oregon; however, his principal ranch holding, since 1943, has been a few miles from Milpitas, some 2500 acres of hill and rolling land, used largely as a cattle ranch; that while this Milpitas ranch will adequately carry the cattle into the spring months, that defendant decided it would be better to have irrigated pasture during the summer and into the fall months, whereby the cattle would carry through for the complete year on green pasture, either owned or leased by him; also, that defendant noted an advertisement by plaintiff, in a farming paper, Western Livestock Journal, which read that plaintiff had '320 acres of excellent ladino clover and tree foil', and thereupon that he drove to the home of plaintiff in Dixon, on February 3, 1952; in his car with him, according to defendant's testimony, were his wife, and Tom Hersbach, his livestock employee, and his wife; also, that during the

ensuing conversation with plaintiff, that he informed plaintiff, that he had seen said advertisement and wished to lease the ranch, if suitable for defendant's purpose, namely, summer and fall pasturage, for some 450 cows, with their calves, to be brought from the Milpitas ranch, in due season; defendant further testified, that plaintiff, on this occasion, assured him, that plaintiff's ranch was an excellent ranch, well irrigated, was a clover ranch of 320 acres, and that it would carry that number of cattle, without any trouble, and that the ranch formerly carried 800 to 900 heifers, and that said 800 head of cattle had been sold off in good condition; defendant's testimony also is, that all of the parties then visited plaintiff's ranch, in plaintiff's automobile, where he and plaintiff viewed the ranch rather briefly, due to the weather and late hour, that the feed appeared suitable and good, and that defendant returned finally to the Milpitas ranch; defendant's testimony in this respect, including particularly that referring to plaintiff's alleged statement of the carrying capacity of the ranch, is corroborated by his said companions on this first trip; that testimony is strongly denied by plaintiff, who has testified, that never at any time, did he make any statement to defendant, as to the number of cattle the ranch would carry; in this respect, plaintiff, while admitting this ranch visit, denied that on said first visit to his ranch, that the parties rode out in plaintiff's automobile, but that he drove out alone and defendant's party drove out in defendant's automobile; the evidence, however, is so convincing to the Court on this feature, that it must hold the fact to be, that all of the parties did make this first visit in plaintiff's said automobile; this feature is mentioned as being indicative, at least in some degree, in the weighing of all of plaintiff's testimony on his recollection thereof; several other visits were made to the ranch by defendant, conferences were had between the parties, plaintiff finally visiting defendant at the Milpitas ranch, where he submitted a form of lease, all resulting in the making of the lease; there is further testimony, on similar statements as to the pasturage capacity of the ranch, including alleged statements made by plaintiff on the Milpitas ranch visit, its general condition as an excellent ranch for its purpose, all claimed to have been made by plaintiff to defendant; while all of this testimony is strongly denied by plaintiff, it is corroborated, in some degree, by defendant's witnesses, and by record evidence introduced at the trial itself; defendant

also testified, that in order to have the full 450 head of cows, he not having that number at the Milpitas ranch, that he would have to, and did, make arrangements with his witness, John Roddy, to furnish 100 head of Mr. Roddy's cows, calves and steers, to make the necessary 450 head, and that Mr. Roddy paid defendant $2,000.00 in advance, for pasturage, so that the necessary initial lease payment might be made to plaintiff; in this connection, defendant wrote plaintiff February 6, 1952, (plaintiff's Exhibit No. 2) that he would put cows and calves on the ranch that summer but would change to steers thereafter, provided he had a five year lease at $16,000.00 annual rental; there is also in evidence, defendant's receipt to Mr. Roddy, for said sum of $2,000.00, dated February 19, 1952, (defendant's Exhibit No. 6); defendant proceeded to send cattle to the ranch and early in May, it would appear, had his maximum number there; the feed soon began to deteriorate and on or about June 15, 1952, plaintiff strongly objected, and so continued to object thereafter, that the ranch was badly overstocked, that this situation was due entirely to defendant, and a spirited correspondence resulted between them and continued until shortly before the complaint was filed; it would appear, that it early became evident that the ranch would not properly or adequately pasture the 450 cows, calves and other cattle that were then, or would be thereafter, placed on it.

"This résumé of what the Court considers the material evidence, in part at least, on this issue of ranch pasturage capacity, leads to the conclusion that the preponderance of evidence thereon, is with defendant, and that it must, therefore, be found that plaintiff made the statements and representations in question, as testified to by defendant and his witnesses; that defendant considered them material, and that he otherwise would not have entered into the lease, which should therefore be cancelled."

Appellant argues that the evidence establishes as a matter of law that the representations, by their very nature, are representations of a future fact, and not as to an existing fact, that when made, the parties were dealing at arm's length and not under the circumstances of any confidential relationship, and that there is an absence of any showing that the representations as to the future productivity of the land were not honestly made or that they were made in bad faith, and such representations, therefore, could not support a charge of fraud.

Appellant cites 51 American Law Reports 49 and other authorities as stating the general rule that fraud must relate to a present or preexisting fact and cannot ordinarily be predicated on unfulfilled promises or statements as to future events. (*Holton* v. *Noble,* 83 Cal. 7 [23 P. 58].) However, it is also stated in the annotation in 51 American Law Reports at page 107 that: "Cases of representation respecting the productivity, etc., of land leased, seem to involve not so much future events as existing qualities of the land, and are not covered in the annotation."

The weakness of appellant's position lies in the fact that the court found upon sufficient evidence that he did make the representations as to the carrying capacity of his ranch and that he admitted in his answer to the cross-complaint that he knew at all times that his ranch would not properly feed 450 cows with their calves. He denied that he made any such representations but the court's finding as to that is binding on us, and therefore the record supports the court's conclusion that the representations were false and fraudulent.

As to appellant's contention that respondent did not rely upon his representations as to the carrying capacity of his ranch, the court's finding that respondent did rely upon them is amply supported by respondent's testimony. It is true that respondent did look over the ranch, but his testimony was that due to the weather and the lateness of the hour he only spent a brief time doing so. Respondent, who was not familiar with the ranch, could hardly be expected to know from such an inspection that the representations of appellant then made were incorrect. Appellant was the only one whose knowledge of the recovery of the feed upon this property was full and complete, and his information was the information sought by respondent. There is therefore support for the conclusion that the misrepresentation of fact made by appellant was not made by him as an expression of opinion or as a hope as to some future event but was a flat misrepresentation of facts made for the purpose of inducing respondent to rely thereon. Respondent cites the case of *Gould* v. *Escondido Valley Poultry Assn.,* 56 Cal.App.2d 681 [133 P.2d 448], in which, quoting from *Powell* v. *Oak Ridge Orchards Co.,* 84 Cal.App. 714 [258 P. 636], it was said: " 'That representations regarding the character and nature of the soil of land sold are statements of a fact and when fraudulently made will justify a rescission of the sale is supported by an unbroken line of authorities in this

state. Particularly is this so when the trial Court, as it has in the present action, found that such representations were statements of fact and not the expression of an opinion. [Citations.]' ''

Appellant's final contention is that the court erred in failing to require respondent to pay the rental on the premises during the period of his occupancy. He cites section 1691 of the Civil Code which lays down the rule that in effecting a rescission a party ''must restore to the other party everything of value which he has received from him under the contract.''

In the instant case the record shows that the respondent paid to appellant the sum of $10,000, which sum was retained by the appellant. After discovering that the land would not produce as represented by appellant respondent repudiated the agreement and removed himself from the premises. The court found that respondent was entitled to rescind the contract but did not award respondent any damages because of the false representation. However, the court found also that appellant was not entitled to recover any further sum for the rental of the premises. This was in effect a finding that what appellant had received and retained was adequate compensation for the occupancy of the premises in view of the fact that the land produced less than half the amount of the feed that appellant represented it would produce. While the findings might have been more complete it is clear from the record that any additional findings would have been adverse to appellant's contentions, and that appellant has suffered no prejudice.

In view of the foregoing we are satisfied that the conclusions of the court that appellant was not entitled to recover anything from respondent and that respondent was entitled to a cancellation of the lease are fully supported by the law and the evidence.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.